1

2

3

4

5                          IN THE UNITED STATES DISTRICT COURT

6                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    MARK MOSES,                                No. C -12-05271 EDL

9              Plaintiff,                        **ORDER GRANTING THE HARRIS
                                                DEFENDANTS' MOTION TO DISMISS**
10       v.

11   INNOPRISE SOFTWARE, et al.,

12              Defendants.
     _____/

13

14        Before the Court is the Harris Defendants' Motion to Dismiss Plaintiff's complaint.

15   Defendants' motion has been fully briefed, and the Court has determined that oral argument is not

16   necessary to resolve the motion.  For the reasons stated in this Order, Defendants' Motion to

17   Dismiss is granted with leave to amend in part.

18   **Allegations from the complaint**

19        Plaintiff alleges that Defendant Innoprise is the designer and seller of software systems

20   which are used by governmental and quasi-governmental agencies for accounting, billing, payroll,

21   operational and management purposes.  Compl. ¶ 15.  Plaintiff alleges that Innoprise's founder and

22   CEO is Defendant Dennis Harward.  Compl. ¶ 16.

23        Plaintiff alleges that in August 2010, Plaintiff was working as a consultant for Innoprise.

24   Compl. ¶ 17.  Plaintiff alleges that at that same time, Dennis Harward began discussions and

25   negotiations with Plaintiff for Plaintiff's regular employment with Innoprise.  Compl. ¶ 17.  Plaintiff

26   alleges that he and Harward, on behalf of Innoprise, reached an oral agreement of employment under

27   which Plaintiff was employed as a sales representative for California and other western states.

28   Compl. ¶¶ 18, 19.  Plaintiff alleges that Innoprise was going to give him a list of target customers,
     and was going to give him support and backup help from the company office in Colorado.  Compl. ¶

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

18.  Plaintiff alleges that the oral employment agreement required Plaintiff to begin his employment at an office in Pleasanton, California as provided by Innoprise, and Innoprise also provided telephone services, company computers, email accounts, and business cards identifying Plaintiff as an employee/sales representative of Innoprise in California.  Compl. ¶ 20.  Under the agreement, Plaintiff alleged that he would receive a salary of $125 per hour up to and including $12,500 for a total of one hundred hours per month.  Compl. ¶ 21.  Additionally, Plaintiff alleges that Innoprise would reimburse him for his work-related expenses.  Compl. ¶ 21.  Plaintiff alleges that the agreement also provided that should he fail to work one hundred hours per month, his salary would be decreased by $125 for each hour less than the one hundred hours.  Compl. ¶ 21.  Plaintiff alleges that this offer of employment was made by Dennis Harward to Plaintiff in California in mid-to-late August 2010 and was accepted in California.  Compl. ¶ 22.  Plaintiff alleges that his employment began on September 1, 2010 in California.  Compl. ¶ 22.

Plaintiff alleges that Innoprise provided him with a company employee handbook and employee agreements regarding confidentiality and conflict of interest requirements and prohibitions, and that he was required to sign the agreements on September 15, 2010.  Compl. ¶ 23.  Plaintiff alleges that Innoprise provided Plaintiff with training materials and sales and product literature in preparation for his employment.  Compl. ¶ 23.  Plaintiff alleges that his sales efforts were directed and supervised by Dennis Harward, Defendant Ann Harward and the national director of sales.  Compl. ¶ 24.  Plaintiff alleges that as an employee, he was required to participate in weekly sales meetings and was required to provide weekly sales reports on his own sales efforts and plans.  Compl. ¶ 24.

Plaintiff alleges that, under his employment agreement, Plaintiff was to dedicate all of his work and efforts to the employment and sales efforts for Innoprise and was not to be involved with competing products or sales or efforts which distracted him from his employment.  Compl. ¶ 25.  Plaintiff alleges that at no time during the course of his employment did he receive a reprimand or criticism of his work.  Compl. ¶ 26.

Plaintiff alleges that Innoprise paid Plaintiff all expenses as reported by him throughout the course of employment.  Compl. ¶ 27.  Plaintiff alleges that Innoprise also paid Plaintiff for his

United States District Court
For the Northern District of California

1    consulting work for the month of August 2010.  Compl. ¶ 27.  Plaintiff alleges, however, that Dennis

2    Harward informed Plaintiff that Innoprise was experiencing cash flow problems and that his salary

3    for September 2010 would be delayed.  Compl. ¶ 28.  Plaintiff alleges that Innoprise paid Plaintiff

4    $8,500 of his September 2010 salary on January 27, 2011.  Compl. ¶ 28.  Plaintiff alleges that from

5    November 2010 through April 2012, Dennis Harward and his wife and co-Defendant, Ann Harward,

6    cited cash flow problems as an excuse for payment delays whenever Plaintiff made a request for his

7    salary.  Compl. ¶ 29.  Plaintiff alleges that the balance of the monthly salary for September 2010 in

8    the amount of $4,000 was not paid until February 11, 2011, and at the same time, Innoprise paid

9    Plaintiff $5,000 towards his October 2010 salary.  Compl. ¶ 30. Plaintiff alleges that the remainder

10   of the October salary was paid by Innoprise on March 15, 2011 in the amount of $7,500.  Compl. ¶

11   30.  Plaintiff alleges that the other sales employees also experienced a delay in payment of salaries

12   during this time.  Compl. ¶ 31.

13          Plaintiff alleges that during a conversation between Plaintiff and Ann Harward, who was the

14   accounting manager, about salary, she revealed that she had not designated Plaintiff as an employee

15   on the company's books and records because "this would cause some difficulty with certain of the

16   company's investors."  Compl. ¶ 32.  Plaintiff alleges that, although he requested a further

17   explanation, none was given.  Compl. ¶ 32.

18          Plaintiff alleges that he put in his monthly sales and activities reports, expense

19   reimbursement requests, and salary requests from September 2010 through April 2011 on the basis

20   of a salary of $12,500 per month and was never told that he would not be paid.  Compl. ¶ 33.

21   Plaintiff alleges that Innoprise did not reject any of his requests.  Compl. ¶ 33.

22          Plaintiff alleges that on April 28, 2011, Plaintiff was at the Innoprise office in Colorado and

23   spoke to Dennis Harward, who told Plaintiff that Harward was discussing the sale of the company to

24   an unidentified party.  Compl. ¶ 34.  Plaintiff alleges that Harward told Plaintiff that he did not need

25   to worry about payment of his salary because it would be covered in the sales agreement and/or paid

26   by royalties.  Compl. ¶ 34.

27          On April 29, 2011, Plaintiff alleges that Dennis Harward announced to Plaintiff that he had

28   sold the company to Defendant N. Harris Computer Corporation (Compl. ¶ 38), and Plaintiff did not

need to worry about money that was owed to Plaintiff.  Compl. ¶ 35.  Plaintiff alleges that on April 29, 2011, Harward terminated Plaintiff and told Plaintiff that he should contact the sales manager of Defendant M.S. Govern Company about a possible position with the new company.  Compl. ¶ 36. Plaintiff alleges that on May 2, 2011, Jeff Bender of N. Harris announced that the company was happy to welcome all of the Innoprise employees to the company family.  Compl. ¶¶ 36, 39.  On May 16, 2011, Plaintiff alleges that he was informed by the sales manager of N. Harris that he was uncertain whether there was a position for Plaintiff.  Compl. ¶ 36.

Plaintiff alleges that he has not received any salary payments since the partial payment for October 2010.  Compl. ¶ 37.  On October 11, 2012, Plaintiff filed this action alleging various claims for breach of contract and fraud.

**Legal Standard**

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)).  The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted  as true and construed in the light most favorable to the plaintiff."  Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions."  Iqbal, 129 S. Ct. at 1949.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Id. at 1950.  Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief."  Id.  Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ."  Id. at 1949 (internal quotation marks omitted) & 1950.  That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

4

**Discussion**

**1.      Plaintiff's fourth and fifth claims for fraud fail to satisfy Rule 9(b).**

"The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting Engalla v. Permanente Med. Group, Inc., 15 Cal.4th 951, 974, 64 Cal.Rptr.2d 843, 938 P.2d 903 (1997)).  Under Federal Rule of Civil Procedure 9(b), a party must plead with particularity the circumstances constituting fraud.  Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); Vess v. Ciba-Geigy, Inc., 317 F.3d 10907, 1106 (9th Cir. 1997) ("Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.' " Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.") (internal citations omitted).

"Rule 9(b) applies when (1) a complaint specifically alleges fraud as an essential element of a claim, (2) when the claim 'sounds in fraud' by alleging that the defendant engaged in fraudulent conduct, but the claim itself does not contain fraud as an essential element, and (3) to any allegations of fraudulent conduct, even when none of the claims in the complaint 'sound in fraud.'" Davis v. Chase Bank U.S.A., N.A., 650 F.Supp.2d 1073, 1089–1090 (C.D.Cal.2009) (citing Vess v. Ciba–Geigy Corp. USA, 317 F.3d at 1102–06). In Vess, the Ninth Circuit offered guidance as to the applicability of Rule 9(b) to claims in which fraud is not an essential element of the claim where the complaint includes allegations of both fraudulent and non-fraudulent conduct.  Vess, 317 F.3d 1097, 1104–1105 (9th Cir. 2003). The court adopted the following rule:

> in a case where fraud is not an essential element of a claim, only allegations ("averments") of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a).

Id. at 1104. The court explained that "[i]n some cases, the plaintiff may allege a unified course of

fraudulent conduct and rely entirely on that course of conduct as the basis of a claim," in which case, "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)," even though fraud is not a required element of the claim. Id. at 1103.

Here, Plaintiff has failed to plead his fraud claims with particularity against the Harris Defendants as required by Rule 9. Plaintiff's allegations are focused on his theory that a fraudulent scheme existed among Defendants with the intent to divert the purchase price of Innoprise from the company to private sources hidden from creditors, while at the same time failing to pay Plaintiff's salary until the assets were hidden. But Plaintiff's allegations of fraud fail to satisfy the "who, what, when, where, and how" of the misconduct charged as required by Vess.

**A.     Fourth claim for fraud**

In the fourth claim for fraud, Plaintiff alleges that in pre-contract discussions between Plaintiff and Harward, Harward represented that Innoprise was a financially viable company which met its obligations and maintained itself in a business-like and honest manner. Compl. ¶ 61. Plaintiff alleges that Harward represented that Innoprise was engaged in lawful business and would need Plaintiff's services as long as Plaintiff performed his job properly. Compl. ¶ 62. Plaintiff alleges, however, that these representations were not true, and that Harward did not tell Plaintiff that Harward and his wife were the majority owners of Innoprise, that Harward was in negotiations to sell the company, and that the addition of Plaintiff to the sales force made the company look more saleable, but that he would be terminated when the company was sold. Compl. ¶ 63. Plaintiff also alleges that Harward did not tell Plaintiff that the company was suffering cash flow problems and that it might not be able to timely pay Plaintiff. Compl. ¶ 63. Plaintiff alleges that Harward did not inform Plaintiff that he was being asked to make sales calls which required misrepresentations and were unlawful and in violation of trademark and copyright laws. Compl. ¶ 64. Plaintiff alleges that the unlawful sales calls were "part of a scheme between Harward, A. Harward, Innoprise, N. Harris, Harris USA and M.S. Govern which were a part of the negotiations for the sale of the business of Innoprise." Compl. ¶ 64.

Plaintiff alleges that Defendants knew the representations were untrue and made with the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    intent to mislead Plaintiff and to cause Plaintiff to agree to contract with Defendants.  Compl. ¶ 65.

2    Plaintiff alleges that Harward and Innoprise never intended to pay his wages.  Compl. ¶ 65.

3         Plaintiff alleges that at the time Harward and Innoprise were contracting with Plaintiff and

4    making these representations, they were negotiating the sale of the business to the Harris

5    Defendants, and they had agreed that Innoprise should not carry or show any additional employees

6    on the books, and that they had also agreed that upon sale of the assets of the company the proceeds

7    could be diverted so that Plaintiff would not be paid.  Compl. ¶ 66.  Plaintiff alleges that had he

8    known that the representations were false, he would not have accepted the employment offer with

9    Innoprise.  Compl. ¶ 67.  Plaintiff also alleges that the Harris Defendants, Dennis Harward, Ann

10   Harward, and M.S. Govern, all advised Innoprise to show Plaintiff as holding a position other than

11   that of employee to avoid the application of the employment laws.  Compl. ¶ 68.

12        Plaintiff alleges that the Harris Defendants knew that the representations of Harward and

13   Innoprise to Plaintiff were false, and did not reveal the falsity because they were to benefit from the

14   work and efforts of Plaintiff and from the breach of the agreement to pay Plaintiff.  Compl. ¶ 70.

15   Plaintiff alleges that the Harris Defendants knowingly participated in preventing Plaintiff from

16   receiving payment.  Compl. ¶ 70.

17        Shortly after April 29, 2011, Plaintiff alleges that Harward told Plaintiff that Innoprise was

18   no longer in operation and had no money to pay him.  Compl. ¶ 72.  Plaintiff alleges that Innoprise

19   and Harward, as sellers of Innoprise, directed the buyers, the Harris Defendants, to pay the purchase

20   money to Harward and Harward Investments directly, rather than to Innoprise.  Compl. ¶ 72.

21   Plaintiff alleges that this diversion of money left employees like Plaintiff unpaid.  Compl. ¶ 73.

22   Plaintiff alleges that he has been damaged in the amount of $71,500.  Compl. ¶ 74.

23        First, Plaintiff does not allege statements made by anyone associated with the Harris

24   Defendants.  Further, although Plaintiff alleges that he was asked to make unlawful statements

25   during sales calls, he does not specify who at the Harris companies told him to do that.  In addition,

26   Plaintiff's allegations about who made misrepresentations improperly lump all Defendants together,

27   which does not satisfy Rule 9.  See Segura v. Green Tree Servicing, 2011 U.S. Dist. LEXIS 64649,

28   at *14 (E.D. Cal. June 17, 2011) ("Also, 'Rule 9(b) does not allow a complaint to merely lump

7

multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'") (internal citation omitted). In his opposition, Plaintiff states that: "As to the who said what and when we will have to wait for discovery to learn that." Opp. at 14. However, the "who said what and when" is required at the pleading stage for fraud.

Second, Plaintiff does not set forth in the complaint whether the alleged misrepresentations were written or oral. See Yulaeva v. Greenpoint Mortg. Funding, Inc., 2009 WL 2880393, at *6 (E.D. Cal. Sept. 3, 2009) (dismissing fraud claim in part because it failed to specify whether the statements were made in writing or orally). Plaintiff states in the opposition that he cannot allege whether the statements were made orally or in writing because he says that Defendants have not "opened their records" to Plaintiff. But Plaintiff alleges that statements made to him were fraudulent, in which case he should know how they were communicated. Plaintiff states that "it is fair to presume that Harris hid this obligation [to pay Plaintiff] and has tried to evade its payment of its assumed obligation . . . ." But an assumption is not sufficient to plead fraud. Further, the Harris Defendants point out that they did not assume any obligation to pay Plaintiff because the agreement between Innoprise and Harris for the sale of Innoprise's assets states that Harris did not assume liability for "any claims directly arising out of the conduct of the Seller [Innoprise] prior to the Time of Closing," and there was no claim or threatened claim disclosed by Innoprise to Harris prior to the purchase. See Holly Decl. Ex. A at § 2.2, 2.7, 2.8(f).

Third, Plaintiff fails to allege when any of the statements were made. While Plaintiff alleges generally that statements were made while the sale was being negotiated, he does not provide the approximate dates when the statements were made. In the opposition, Plaintiff argues that it is clear that all statements were made between August 2010 and May 2012, but even if that is true, pleading fraud requires much more specificity than sometime over an almost two year period.

Fourth, Plaintiff does not allege where any of the statements were made, and there are no allegations from which the Court can determine where the statements were made. See Segura, 2011 U.S. Dist. LEXIS 64649, at *14. Plaintiff does not address this issue in the opposition.

Fifth, Plaintiff fails to specify why the statements were fraudulent. Although Plaintiff alleges

8

that misrepresentations were made to avoid paying Plaintiff, Plaintiff fails to allege which statements were fraudulent when they were made.  Plaintiff alleges that Dennis Harward represented that Innoprise was a viable company engaged in lawful business, but fails to provide sufficient particularity about why this was a misrepresentation at the time it was made.

Plaintiff argues in the opposition that the Harris Defendants cannot claim that they did not know what labor laws Plaintiff alleges were violated by failing to pay him because the laws are cited in the complaint.  Compl. ¶¶ 37, 44, 45, 46, 47.  Although the complaint cites several labor laws, Plaintiff has failed to tie these alleged violations to the Harris Defendants.  The Harris Defendants acquired the company at the same time that Plaintiff was terminated and the purchase agreement stated that Harris did not assume claims arising out of Innoprise's conduct prior to the sale.

Plaintiff has failed to allege the fourth claim for fraud with particularity as required by Rule 9.  The fourth claim against the Harris Defendants is dismissed with leave to amend.

The Harward Defendants, who are pro se, have not moved to dismiss the fourth claim against them, and have not formally joined in this motion.  However, the Court notes that Plaintiff's allegations of fraud in the fourth claim against the Harwards also fail to satisfy the Rule 9(b) standard, and therefore dismisses this claim as to them as well, with leave to amend the fourth claim to also include more particularized allegations against the Harwards.

**B.      Fifth claim for fraudulent transfer**

In the fifth claim for fraudulent transfer, Plaintiff alleges that Defendants intentionally directed the funds from the purchase of Innoprise's assets to the personal benefit of Dennis Harward, Ann Harward, Harward Investment, John Connors, and Crusader Investments for the purposes of avoiding, delaying or hindering payment to Plaintiff of the money due to him for his work.  Compl. ¶ 78.  Plaintiff alleges that the Harris Defendants were aware of Innoprise's obligations and knew that the funds were being transferred to individuals and entities other than Innoprise.  Compl. ¶ 80.

"A transfer of assets made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer (1) with an actual intent to hinder, delay, or defraud any creditor, or (2) without receiving reasonably equivalent value in return, and either (a) was engaged in or about to engage in a business or transaction for which the debtor's

assets were unreasonably small, or (b) intended to, or reasonably believed, or reasonably should

have believed, that he or she would incur debts beyond his or her ability to pay as they became due."

See Cortez v. Vogt, 52 Cal.App.4th 917, 928 (1997) (internal citations omitted); see also Cal. Civ.

Code § 3439.04.  There are eleven nonexclusive factors that have been regarded as circumstantial

"badges of fraud" that are probative of intent.  See Cal. Civ. Code § 3439.04(b) ("(1) Whether the

transfer or obligation was to an insider. (2) Whether the debtor retained possession or control of the

property transferred after the transfer. (3) Whether the transfer or obligation was disclosed or

concealed. (4) Whether before the transfer was made or obligation was incurred, the debtor had been

sued or threatened with suit. (5) Whether the transfer was of substantially all the debtor's assets. (6)

Whether the debtor absconded. (7) Whether the debtor removed or concealed assets. (8) Whether the

value of the consideration received by the debtor was reasonably equivalent to the value of the asset

transferred or the amount of the obligation incurred. (9) Whether the debtor was insolvent or became

insolvent shortly after the transfer was made or the obligation was incurred. (10) Whether the

transfer occurred shortly before or shortly after a substantial debt was incurred. (11) Whether the

debtor transferred the essential assets of the business to a lienholder who transferred the assets to an

insider of the debtor.").  Among the more common badges of fraud are:

> (1) actual or threatened litigation against the debtor; (2) a purported transfer of all or
> substantially all of the debtor's property; (3) insolvency or other unmanageable
> indebtedness on the part of the debtor; (4) a special relationship between the debtor
> and the transferee; and, after the transfer, (5) retention by the debtor of the property
> involved in the putative transfer.

Acequia, Inc. v. Clinton, 34 F.3d 800, 806 (9th Cir. 1994).

Plaintiff has not adequately alleged the intent to defraud.  First, Plaintiff alleges that

Innoprise directed the funds from the purchase by the Harris Defendants to the personal benefit of

Harward, Harward Investments, Connors and Crusader Investments.  Compl. ¶ 78.  Yet this

conclusory allegation is not enough to support intent.  Further, the purchase agreement states that the

purchase price was to go to the seller or whoever the seller [Innoprise] designated in writing should

receive the funds.  Holly Decl. Ex. A at § 2.4.  Thus, the Harris Defendants did not have any

discretion in where to pay the funds.

Further, Plaintiff alleges that the Harris Defendants were aware of the debt owed to Plaintiff,

but this allegation is conclusory and not supported by any facts.  The Harris Defendants argue that they had no knowledge of any claim by Plaintiff at the time of the purchase, and according to the sales agreement,[1] Plaintiff was not listed as a key employee (Holly Decl. Ex. A at Schedule F), was not listed as an employee or consultant (Holly Decl. Ex. A at Schedule E), and was not a person with pending or threatened litigation against Innoprise  (Holly Decl. Ex. A at Schedule D § 3.1(j)(xvi), (n)).

Plaintiff alleges that the transfer of the value of the purchase of Innoprise's assets was to an insider because Harward was the equity owner of Innoprise.  The Harris Defendants argue that there was no transfer to an insider because Plaintiff is mistaken about the identity of the insider.  Cf. In re Schuman, 81 B.R. 583, 586 (9th Cir. 1987) (construing the bankruptcy code definition of "insider" and stating that: "'According to the legislative history, an insider is "one who has a sufficiently close relationship with a debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor.'") (internal citation omitted).  Thus, the transferee is the entity to whom the property was transferred (Harris), not to whom the funds were transferred (Harward), and there are insufficient allegations to show that the transferee Harris is close in relationship to the debtor Innoprise.

Plaintiff's fifth claim is not pled with sufficient particularity.  Plaintiff has not sufficiently pled facts that show that the transfer of the purchase price was made with the actual intent to delay or defraud any creditor, including Plaintiff, and has not sufficiently pled that the debtor did not receive "reasonably equivalent value in return, and either (a) was engaged in or about to engage in a business or transaction for which the debtor's assets were unreasonably small, or (b) intended to, or reasonably believed, or reasonably should have believed, that he or she would incur debts beyond his or her ability to pay as they became due."  Cortez, 52 Cal.App.4th at 928.  This claim is

---

[1]      In support of the motion to dismiss, the Harris Defendants provided a copy of the sales agreement between the Harris Defendants and Innoprise, which is judicially noticeable.  Under Federal Rule of Civil Procedure 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Furthermore, a court "shall take judicial notice if requested by a party and supplied with the necessary information."  See Fed. R. Civ. P. 201(d); Mullis v. United States Bank, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987).  Further, Plaintiff does not challenge the authenticity of the sales agreement.

United States District Court
For the Northern District of California

1   dismissed with leave to amend.

2          Again, the Harward Defendants have not moved to dismiss the fifth claim against them, and

3   have not formally joined in this motion.  However, the Court notes that Plaintiff's allegations of

4   fraudulent transfer in the fifth claim against the Harwards also fail to satisfy Rule 9(b) and the

5   requirements of <u>Cortez</u>.  In particular, Plaintiff has failed to allege that the sales transaction was not

6   a true exchange of equal value or that the purchase price was artificially low and the debtor still

7   retained control.  <u>See</u> <u>Cortez</u>, 52 Cal.App.4th at 928.  Therefore, the Court dismisses the fifth claim

8   as to the Harwards, with leave to amend to also include more particularized allegations against the

9   Harwards.

10  **2.      Plaintiff's first and second claims fail to state a claim**

11         Plaintiff's first claim is for breach of employment contract.  He alleges that he was employed

12  by Innoprise and was due a salary of $12,500 per month.  Compl. ¶ 42.  He alleges that Innoprise

13  failed to pay him his salary for several months in the total amount of $71,500.  Compl. ¶ 43.

14  Plaintiff alleges that upon his termination, there was no payment or offer of payment of wages then

15  due and therefore, Plaintiff is entitled to additional salary, interest, fees, and costs under the

16  California Labor Code.  Compl. ¶¶ 44-46.  Plaintiff alleges that Defendants Dennis Harward and

17  Ann Harward, in agreement with the Harris Defendants, advised Innoprise to show the employment

18  status of Plaintiff as other than an employee to avoid the application of employment laws.  Compl. ¶

19  47.

20         Plaintiff's second claim is for breach of contract.  He alleges that on or about August 26,

21  2010, Dennis Harward, on behalf of Innoprise, orally contracted with Plaintiff to employ him in

22  sales of software product, systems, and services.  Compl. ¶ 49.  Plaintiff alleges that his sales efforts

23  were to be directed by Harward, the Innoprise sales manager and office manager Ann Harward.

24  Compl. ¶ 49.  Plaintiff alleges that he worked as a salesperson from September 1, 2010 to April 29,

25  2011.  Compl. ¶ 50.  He alleges that he satisfied all conditions of his employment contract.  Compl.

26  ¶ 51.  Plaintiff alleges that Innoprise paid all of Plaintiff's expenses and some of his salary, but has

27  not paid salary for the months of November and December 2010, and January through April 2011, in

28  the total amount of $71,500.00.  Compl. ¶¶ 52, 53.  Plaintiff alleges that he is entitled to interest on

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    this amount under the California Labor Code.  Compl. ¶ 54.  Although the Harris Defendants move

2    to dismiss the second claim against them, it appears that Plaintiff's second claim is not alleged

3    against the Harris Defendants, but only the Harward Defendants.  See Compl. at Prayer.  However,

4    Plaintiff opposed the motion to dismiss the second claim against the Harris Defendants and did not

5    argue that the second claim was not alleged against them, so the Court will presume that he intended

6    to allege the claim against the Harris Defendants as well.

7         There are no allegations of any contract between Plaintiff and any Harris Defendant.  In fact,

8    Plaintiff alleges that he was not hired by Harris.  Compl. ¶ 36.  Plaintiff, however, argues that the

9    contract between Harris and Innoprise provided that Harris assumed the obligation for accrued

10   salaries, and that a press release by Harris stated that "We welcome the employees and customers of

11   Innoprise to the Harris family," so there was a contract between the Harris Defendants and Plaintiff.

12   Plaintiff did not make any allegations about a press release in the complaint, and even if he had,

13   Plaintiff has cited no authority that a unilateral, very generally worded press release can be

14   transformed into an employment contract.  Further, the allegations are that Plaintiff's employment

15   was terminated on April 29, 2011 and that he was not employed by Harris.

16        Plaintiff also seems to argue that the Harris Defendants had an employment relationship with

17   Plaintiff by virtue of Dennis Harward's direction to Plaintiff to perform continuing services for

18   Harris.  Plaintiff acknowledges, however, that he has not pled in the complaint that Harward directed

19   Plaintiff to do anything in connection with the Harris Defendants.  Even if Plaintiff were to allege

20   that Harward directed Plaintiff to perform services for Harris, that allegation would not adequately

21   plead a contract between the Harris Defendants and Plaintiff.

22        Further, the purchase agreement between Innoprise and Harris states that Harris assumed

23   liabilities and obligations of Innoprise "in respect of the Assumed Contracts" to the extent arising

24   "after the Closing Date, except that the US Purchaser shall not assume or agree to pay, discharge or

25   perform any liabilities or obligations whatsoever (x) arising out of any breach or default (including

26   for this purpose any event which, with notice or lapse of time would constitute such a breach or

27   default) by the Seller of any provision of any Assumed Contract, including liabilities or obligations

28   arising out of the Seller's failure to perform any agreement, contract, commitment or Lease in

13

accordance with its terms prior to the Closing Date, . . ." Holly Decl. Ex. A at 13.  The agreement

defines "Assumed Contracts," and does not list any contract with Plaintiff.  See id. § 1.1; Schedule

K.  The purchase agreement also states that Harris was not assuming any liabilities for unpaid salary.

Specifically, the agreement stated that Harris did not assume:

> any liability or obligation (other than the PTO Obligation) with respect to
> employment or consulting agreements of any nature and compensation or employee
> benefits of any nature owed to any employees, former employees, agents or
> independent contractors of the Seller, whether or not employed by a Purchaser after
> the Closing Date, that (i) arises out of or relates to the employment/independent
> contractor or service provider/independent contractor relationship between the Seller
> and any such individuals, (ii) arises out of or relates to any Benefit Plan or (iii) arises
> out of or relates to events or conditions occurring on or before the Closing Date or
> resulting from the Closing or termination of employment/independent contractor
> status by a Purchaser after the Closing Date;

Holly Decl. Ex. A at § 2.8(g).

Plaintiff argues that the term "Assumed Liabilities" includes "accrued payroll" (Holly Decl.

Ex. A at § 1.1), so there was a breach of the obligation to pay Plaintiff.  However, the purchase

agreement goes on to state in the same paragraph that Assumed Liabilities does not include "any

liabilities of the Seller except those explicitly set forth herein as being assumed by the Purchasers, or

either of them, as liabilities of the Purchased Business."  Id.  There is no allegation that an alleged

liability to Plaintiff was set forth in the agreement.

Plaintiff argues that he is surprised by the Harris Defendants' denial of any continued

liability because the issue of continued liability has been litigated in district courts in Florida and

Iowa.  Plaintiff does not provide any citations to those cases, but they are irrelevant in any event.

Neither of the cases deals with Plaintiff or with California law.  See Opp. at 9-10 (describing the

Florida and Iowa cases).

Plaintiff's first and second claims are dismissed without leave to amend as to the Harris

Defendants because there is no showing that there was a contract between Plaintiff and Harris that

could be breached, and none of Plaintiff's arguments or unpleaded allegations would plausibly state

a claim.  Again, the Harward Defendants have not moved to dismiss the first and second claims

against them, and have not joined in this motion.  The Court notes, however, that Plaintiff's

allegations in the first and second claims appear to be sufficient to state claims for breach of contract

14

against the Harwards.

**3.      Plaintiff's third claim for quantum meruit fails to state a claim**

Plaintiff alleges that during the period from November 1, 2010 to April 29, 2011, Plaintiff provided services as a sales representative of software and software systems at the specific request of Dennis Harward, and the tacit request for Ann Harward for the benefit of the Harwards, Innoprise and the Harris Defendants. Compl. ¶ 56. Plaintiff alleges that the services performed were of benefit and had a value to all Defendants, and the reasonable value of the services was $12,500 per month or $125 per hour. Compl. ¶ 57. Plaintiff alleges that Defendants have refused to pay for his services in the total amount of $71,500, and that he is entitled to interest on that amount under the California Labor Code. Compl. ¶¶ 58, 59.

"Quantum meruit refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.' To recover in quantum meruit, a party need not prove the existence of a contract, but it must show the circumstances were such that 'the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made.' The burden is on the person making the quantum meruit claim to show the value of his or her services and that they were rendered at the request of the person to be charged." Miller v. Campbell, Warburton, Fitzsimmons, Smith, Mendel & Pastore, 162 Cal.App.4th 1331, 1344 (2008) (internal citations omitted).

Essentially, Plaintiff is seeking to hold the Harris Defendants liable for Innoprise's failure to pay. The date of the asset purchase by the Harris Defendants was April 29, 2011, and Plaintiff was terminated on that date, which means that he is only seeking quantum meruit for the time that he was employed by Innoprise. For the reasons stated above, the purchase agreement shows that the Harris Defendants did not assume any debt related to Plaintiff. Plaintiff does not allege that his services were rendered at the request of the Harris Defendants. Plaintiff alleges that his services benefitted Harris, but that is not enough to state a claim for quantum meruit.

Plaintiff argues that discovery will reveal that Plaintiff's efforts gave the Harris Defendants the City of Flagstaff contract that Harward proposed to use to pay Plaintiff's back salary, but that "we must presume Harris, then, refused to provide such a payout." Opp. at 11. This argument does

1   not show that the Harris Defendants requested Plaintiff's services.  Plaintiff was terminated on the

2   day that the asset purchase closed, and he never worked for Harris.  There is no allegation that

3   Harris asked Plaintiff to do anything. Therefore, Plaintiff's third claim against the Harris Defendants

4   is dismissed without leave to amend.

5           The Harward Defendants have not moved to dismiss the third claim against them, and have

6   not joined in this motion.  However, the Court notes that Plaintiff appears to have stated a claim for

7   quantum meruit against the Harwards.  Plaintiff alleges that he was employed by Innoprise, but that

8   he provided services at the request of the Harwards and for the benefit of the Harwards.

9   **4.      Defendant MS Govern is dismissed**

10          According to the Harris Defendants, MS Govern is a division name of N. Harris Computer

11  Corporation, not a corporate entity of any kind, and therefore, the Court lacks personal jurisdiction

12  over this Defendant.  Plaintiff argues that the Harris Defendants "admit in its motion that MS

13  Govern was a wholly owned subsidiary of Harris and that Harris does business as MS Govern."

14  Opp. at 16-17.  However, the Harris Defendants instead state that MS Govern is only a division

15  name of N. Harris Computer Corporation, not a corporate entity, and does not have a fictitious

16  business name filing. Plaintiff points to the press release, which is not pled in the complaint, which

17  states that employees of Innoprise would work for a "newly formed subsidiary affiliated with Harris'

18  MS Govern local government business unit. . . ."  Opp. at 6.  Plaintiff speculates that this means that

19  MS Govern is a dba of the Harris Defendants and that there is no other logical conclusion from the

20  press release except that "the Innoprise business is continuing on under the entity of MS Govern."

21  Opp. at 17.  However, Plaintiff has made no plausible showing that MS Govern is a corporate entity

22  that is subject to suit.

23          The motion to dismiss MS Govern is granted.  Plaintiff has not shown that MS Govern is an

24  entity subject to suit.

25  **Conclusion**

26          The Harris Defendants' motion to dismiss is granted, with leave to amend in part as stated

27  above.  In addition, Plaintiff's fourth and fifth claims against the Harward Defendants are dismissed

28  with leave to amend.  Plaintiff's amended complaint shall be filed no later than August 9, 2013.

**United States District Court**
For the Northern District of California

16

United States District Court
For the Northern District of California

1    A further case management conference is set for August 27, 2013 at 10:00 a.m.  The Court

2  intends to set pretrial and trial dates at the August 27, 2013 case management conference.  The

3  parties shall file separate case management conference statements no later than August 20, 2013.

4    **IT IS SO ORDERED.**

5

6  Dated: July 25, 2013

7    ELIZABETH D. LAPORTE
    United States Chief Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28