Ann Harward
Dennis Harward
555 Eldorado Boulevard
Suite 100
Broomfield, Colorado 80021

In *Pro Per*



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK MOSES,

     Plaintiff,

v.

INNOPRISE SOFTWARE INC., DENNIS
HARWARD, ANN HARWARD, HARWARD
INVESTMENTS, INC., HARRIS SYSTEMS USA,
INC., N. HARRIS COMPUTER CORPORATION,
M.S. GOVERN CO. and DOES 1-20 inclusive,

     Defendants.

CASE NO.  C 12-05271 EDL

DEFENDANTS ANN AND DENNIS
HARWARD'S   NOTICE OF MOTION
TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT

Hearing:
Date:
Time:
Dept:   E, 15th Floor
Judge:  Hon. Elizabeth D. Laporte

Complaint Filed:  July 2, 2012
First Amended Complaint Filed: August 9, 2013

**NOTICE OF MOTION**

**TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that                           as soon          as the matter may be heard, in Courtroom E of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Judge Laporte, Defendants    Dennis and Ann Harward ("Harwards" or "Defendants")                   will and hereby does move the Court pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), for an order dismissing each claim of Plaintiff's Complaint for failure to state a claim.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities In Support of the Motion, and such further evidence, authorities, and argument as may be presented in advance of, or during, the hearing on this Motion.


DATED:  September 11, 2013


By: /s/  Dennis and Ann Harward_____

ii                     Case No. C 12-05271 EDL

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     PROCEDURAL HISTORY AND STATEMENT OF FACTS ........................................ 3

III.    ARGUMENT .............................................................................................................. 6

        A.      THE FAC VIOLATES THE ORDER SINCE IT CONTAINS A PARTY AND
                CLAIMS WHICH WERE DISMISSED WITH PREJUDICE. .......................................... 6

                1.      The Order Dismissed All Claims Against MS Govern With Prejudice ................ 6

                2.      The Order Dismissed Plaintiff's Claim For Quantum Meruit Against
                        Harris With Prejudice. .......................................................................................... 7

                3.      The Order Dismissed Plaintiff's Claims Under California's Labor Code
                        Against Harris With Prejudice. ............................................................................. 7

        B.      PLAINTIFF'S FOURTH CAUSE OF ACTION FOR FRAUD DOES NOT AND
                CANNOT PLEAD THE NECESSARY FACTS REQUIRED BY THE ORDER
                AND RULE 9(B). ................................................................................................. 8

        C.      PLAINTIFF'S FIFTH CAUSE OF ACTION FOR FRAUDULENT TRANSFER
                DOES NOT AND CANNOT PLEAD THE NECESSARY FACTS REQUIRED
                BY THE ORDER AND CALIFORNIA LAW ................................................................ 11

IV.     CONCLUSION ......................................................................................................... 16

Case No. C 12-05271 EDL
NOTICE OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMO OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Federal Cases**

*Argueta v. J.P. Morgan Chase,*
    787 F.Supp.2d 1099 (E.D.Cal. 2011)..................................................................... 13

*Arroyo v. Cont'l Airlines, Inc.,*
    173 Fed.Appx. 634 (9th Cir.2006)...................................................................... 7, 8

*In re Beverly,*
    374 B.R. 221 (9th Cir.Bankr.2007 (Cal.)) ............................................................ 12

*Black & Veatch Corp. v. Modesto Irrigation Dist.,*
    827 F.Supp.2d 1130 (E.D.Cal. 2011)..................................................................... 13

*In re Clawson,*
    434 B.R. 556 (N.D.Cal.Bankr. 2010) .................................................................. 7, 8

*Grant v. Aurora Loan Srvs., Inc.,*
    736 F.Supp.2d 1257 (C.D.Cal. 2010) .................................................................... 14

*Houston v. Medtronic, Inc.,*
    --- F.Supp.2d --- (C.D.Cal. July 30, 2013)............................................................ 13

*Kaufman and Broad-South Bay v. Unisys Corp.,*
    822 F.Supp. 1468 (N.D.Cal. 1993) ........................................................................ 15

*Ott v. Home Sav. & Loan Ass'n,*
    265 F.2d 643 at n. 1 (9th Cir.1958)....................................................................... 15

*Rubke v. Capitol BanCorp Ltd.,*
    460 F.Supp.2d 1124 (N.D.Cal. 2006) .................................................................... 14

**State Cases**

*Annod Corp. v. Hamilton & Samuels,*
    100 Cal.App.4th 1286 (Cal.Ct.App.4th 2002) ...................................................... 12

*Asnon v. Foley,*
    105 Cal.App. 624 (Cal.Dist.Ct.App.2d 1930)....................................................... 12

*Filip v. Bucurenciu,*
    129 Cal.App.4th 825 (Cal.Ct.App.3d 2005) .......................................................... 12

**State Statutes**

Cal. Civ. Code § 3439.04.................................................................................................. 12

NOTICE OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMO OF POINTS AND AUTHORITIES

**Federal Rules**

Fed. R. Civ. P. Rule 8 ........................................................................................................ 1

Fed. R. Civ. P. Rule 9 ........................................................................................................ 1

Fed. R. Civ. P. Rule 9(b)........................................................................... 3, 4, 8, 9, 10, 13, 14

Case No. C 12-05271 EDL
NOTICE OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMO OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Dennis and Ann Harward ("Harwards" or "Defendants") pursuant to Rules 8, 9 and 12(b)(6) of the Fed. R. Civ. Pro., respectfully submit the following memorandum of points and authorities in support of their Motion to Dismiss Plaintiff's First Amended Complaint (the "FAC") as against the Harwards. The FAC should be dismissed because it seeks relief from a party and includes claims that were dismissed with prejudice by this Court. Additionally, the fraud claims contained in the FAC should be dismissed because they fail to (a) identity any misrepresentations made by Harwards to Plaintiff and (b) are devoid of any supporting factual allegations, and therefore again fail to satisfy the threshold pleading standard for fraud claims under Fed. R. Civ. P. Rules 8 and 9. Given that Plaintiff has not and cannot allege any plausible set of facts in support of his claims against Harwards that would entitle him to relief, his claims should be dismissed with prejudice.

## I.      INTRODUCTION

Following this Court's entry of its Order Granting the Harris Defendants' Motion to Dismiss (Doc. 53) (hereinafter, the "Order") and its dismissal of Plaintiff Mark Moses' ("Plaintiff" or "Moses") initial Complaint, on August 9, 2013 Plaintiff filed his FAC, attempting to resurrect his gutted suit with an even more confusing hodgepodge of unsupported factual allegations and self-contradicting theories than those he originally pled. The *gravamen* of Plaintiff's suit is his contention that he is owed approximately $71,500 in back-pay from his former employer, Defendant Innoprise Software, Inc. ("Innoprise").

The remainder of Plaintiff's FAC quickly devolves into a series of incomprehensible allegations completely and utterly irrelevant to Plaintiff and/or his claims.  Accordingly, dismissal of Plaintiff's FAC **with prejudice** is warranted.

For example, on the one hand, Plaintiff alleges in the FAC (without a shred of factual support) that Harris' purchase of Innoprise for $3.7 million dollars was a severe underpayment because, years after the sale, Innoprise's owner, Defendant Dennis Harward ("Harward"), "valued the business at something in excess of $25,000,000." (FAC ¶ 39.)   On the other hand, Plaintiff conflictingly asserts that Innoprise was "not financially sound and could not meet its current obligations" to Plaintiff (and others), leading Innoprise's lenders to compel its sale to Harris. (FAC ¶¶ 28-31, 75-76, 106.) Additionally, Moses speculates that at the time of sale, Innoprise had "over $10 million in contract sales pending," even though the schedules attached to the APA[2] clearly show that this is not the case.  (FAC ¶ 102.)  Indeed, the schedules attached to the APA indicate that, at the time of sale, Innoprise had a total customer accounts receivable balance of only $688,794.13 and tangible net assets of **negative** $3,318,233.  (*See* APA, Sch. I and M.)

Additionally, the FAC directly violates the Order.  For example, the FAC names and continues to seek relief from MS Govern, even though the Order dismissed all claims against that entity.  *See* Order p. 16.  Further, the FAC continues to assert a claim for Quantum Meruit against Harris, despite the Order's mandate that "Plaintiff's third claim against the Harris Defendants [for Quantum Meruit] is

---

[2] The April 29, 2011 Asset Purchase Agreement ("APA") between Innoprise and Harris was filed by Harris in support of its prior Motion to Dismiss on October 26, 2012 as "Exhibit A" to the Declaration of Jennifer M. Holly (Doc. 8.)  The Schedules which were attached to the APA were filed by Harris on November 30, 2012 as "Exhibit A" to the Declaration of Jennifer M. Holly (Doc. 17.)  In the Order, the Court took judicial notice of these documents. (Order p. 11, n. 1.)

dismissed without leave to amend." *See Id.* Finally, the FAC continues to seek relief against Harris under California's Labor Code, even though it is undisputed that Moses was never an employee of Harris and the prior iteration of his Labor Code claim was dismissed *without* leave to amend. *See* Order pp. 12-14.

The Order did permit the Plaintiff to re-plead his fraud claim, provided, however, that he could identify with the specificity required under Fed. R. Civ. P. Rule 9(b), any alleged misrepresentations made.

As explained herein, all of Plaintiff's claims should be dismissed with prejudice forthwith.

## II. <u>PROCEDURAL HISTORY AND STATEMENT OF FACTS</u>

Plaintiff's 30-page, 118-paragraph FAC belies the fact that this is really just a simple case for recovery of $71,500 in back-pay from his alleged former employer, Defendant Innoprise.[3] Plaintiff alleges that he was hired by Innoprise in August 2010 for an agreed-upon monthly salary but, due to cash flow problems at Innoprise, he was not paid his monthly salary from November 2010 until his termination on April 29, 2011. (FAC ¶¶ 17-36.) On April 29, 2011, the assets of Innoprise were purchased by Harris pursuant to the APA of even date. In the schedules attached to the APA, Innoprise did not list any employment contract with Plaintiff, did not list Plaintiff as a "key employee," did not make reference to any threatened or pending claim involving Plaintiff, and did not indicate that it owed Plaintiff any money. (APA, Sch. F, E, D and §§ 3.1(j)(xvi), 3.1(n); Order p. 11.) That is because the Plaintiff was not an employee of Innoprise, and was not owed any money. The Harwards state that this is proof the Plaintiff was not an employee. Upon his termination from Innoprise on April 29,

---

[3] Innoprise, through its owner, Defendant Harward, admits that Moses is owed this money but claims that it does not have the money to pay the Plaintiff.

2011, Plaintiff was advised by Defendant Harward to contact the sales manager at Harris to inquire about a "possible position with the new company [Harris]." (FAC ¶ 36.) Unfortunately for the Plaintiff, he was advised by Harris that a position was not available. (*Id.*) Notwithstanding the reality of his situation, Plaintiff continues to invent creative (albeit implausible) theories to hold Harris liable for Innoprise's alleged unpaid wages owed to Moses. Plaintiff was terminated as an independent contractor.

In the Order, this Court dismissed ***without leave to amend*** Plaintiff's claims for Breach of Employment Contract, Breach of Contract, and Quantum Meruit, as well as former party Defendant MS Govern. (*See gen.* Order.) The Court also dismissed Plaintiff's fraud and fraudulent transfer claims against Defendants with leave to amend, provided, however, that Plaintiff could allege sufficient facts to support said claims. Specifically, the Order points out that Plaintiff failed to identify any alleged misrepresentations made by the Harwards and completely omitted any of the "who, what where, when and how" details necessary to meet the threshold pleading standards applicable to any claim sounding in fraud. (Order pp. 6-9.) As to Plaintiff's fraudulent transfer claim, the Order also noted that "Plaintiff has not sufficiently pled facts that show that the transfer of the purchase price was made with actual intent to delay or defraud any creditor, including Plaintiff, and has not sufficiently plead that the debtor did not receive 'reasonably equivalent value in return.'" (Order p. 11.)

On August 9, 2013, Plaintiff filed the FAC. While the FAC is littered with an assortment of speculative facts concerning the relationship between Harris and Innoprise/Harward, it fails to correct the deficiencies leading to the Court's dismissal of the initial Complaint. Plaintiff repeats the theory set forth in his original Complaint in the FAC, to wit: that a fraudulent scheme existed among the Defendants intended to divert the purchase price paid by Harris for Innoprise from the company to private sources, while at the same time failing to account for or pay the monies allegedly owed by Innoprise to Plaintiff for his back wages.[4] Once again, however, Plaintiff fails to supply the additional factual detail required by the Order and Rule 9(b) to make his theory colorable. (Order p. 6.)

---

[4] The FAC admits that Plaintiff was made aware of the sale to Harris on April 29, 2011. Nevertheless, he curiously waited until July 2012 until filing this action seeking payment of his back-pay from the sale proceeds.

Plaintiff attempts to mask this fatal oversight by adding a new theory to the mix which, once again, is based entirely on conjecture, has nothing to do with the Plaintiff's claims, and is contradicted by other allegations in the FAC and/or the express terms of the APA.  Specifically, Plaintiff contends: (1) because Innoprise's lenders (John Connor/Crusader Investments) refused to provide further funding which would allow Innoprise to meet its on-going financial obligations, Harward was forced to sell Innoprise to Harris; (2) Harris knowingly took advantage of Harward/Innoprise's dire financial situation, and purchased Innoprise's assets for a price that Harward later believed was substantially below its "true value"; (3) although Harward was resistant to the Harris purchase, he worked with Harris to enhance Innoprise's appeal by eliminating Moses' status as an employee from the Innoprise books in order to insure approval of the sale by Harris' board of directors; (4) Harward agreed to the Harris purchase because of statements that Harris allegedly made to Harward that its successful marketing of the Innoprise assets would earn Harward/Innoprise future royalties (provided for under Section 2.12 of the APA) of over $10 million dollars,[5] which Innoprise would supposedly use to pay off creditors such as Moses; (5) inexplicably, Harris has refused to market the Innoprise assets (for which it paid $3.7M) in order to avoid paying royalties to Innoprise, leaving Innoprise impotent to pay its creditors such as Moses.

For example, the FAC contains the following new allegations:

- While Harris' purchase price of the Innoprise assets was $3.7 million, "the owner of Innoprise, Harward, valued the business at something in excess of $25,000,000…" (FAC ¶39).  Further, "Harward has stated that there was over $10,000,000 in contract sales pending at the time [of purchase]" (FAC ¶ 102);

- Following the sale, Harris provided an accounting "which Harward states he is unable to understand or reconcile or produce to Moses" (FAC ¶ 40);

---

[5] Section 2.12(b) of the APA provides for "Additional Consideration" (or royalty) payments to Innoprise of 25% of cash received of Net Revenue from the sale of certain Innoprise assets **after** the purchase price adjustment for tangible net assets (Section 2.6) is completed and expenses associated with the payment of claims for which Innoprise indemnified Harris (e.g. the SunGard litigation and other pre-closing liabilities) are deducted.

- Harward has stated that Harris represented to him that they would actively sell and market the Innoprise software and programs (which it purchased for $3.7M) and projected that Harward would receive $10,820,000 in royalties, but that it ceased all efforts to sell such assets (FAC ¶¶ 41-43);

- Harris was aware that Harward was representing to creditors such as Moses, that they would be paid out of the contract or royalties (FAC ¶ 45);

- Harris acted in concert with Harward to eliminate employees from Innoprise's books "to create a better looking package to present to the Harris board..." (FAC ¶90); and

- Harris was aware that Innoprise's lenders (John Connors and Crusader Investments) were no longer willing to continue with new loans and used this fact to its advantage during the negotiations leading up to the APA and resulted in a lower sales price  (FAC¶ ¶106-107).

While the above allegations and theories are creative (albeit wholly speculative and illogical), they have nothing whatsoever to do with the Plaintiff and/or Plaintiff's claims.  Obviously a purchaser in an arms-length transaction can use the financial weaknesses of the seller to garner a better sales price.  The FAC remains devoid of any alleged misrepresentation made by Harward⊕ Moses, much less the "who, what, where and when" details demonstrating the inaccuracy of any such statement at the time it was made.  Further, while the FAC tells a story of "seller's remorse" on the part of Innoprise/Harward, it fails to allege sufficient facts necessary to show any intent of the Harwards to      defraud the Plaintiff or that Harwards    had knowledge of Moses' claim prior to the sale.  As such, the FAC fails to state a cause of action against  Harwards for fraud or fraudulent transfer, and especially because Plaintiff was  not an employee and because his claims against Harwards are bogus.

## III.   ARGUMENT

### A.   The FAC Violates the Order Since It Contains a Party and Claims Which Were Dismissed With Prejudice.

#### 1.   The Order Dismissed All Claims Against MS Govern With Prejudice.

Although there are no Counts or paragraphs directed to MS Govern, it nevertheless appears that Plaintiff continues to seek relief against MS Govern in the FAC.   For example, MS Govern continues to be listed in the case style and is included in the prayer for relief for the Fourth and Fifth Cause of Action (for fraud and fraudulent transfer).  (FAC  p. 29.)  As noted above, the Order dismissed MS Govern from this action because "Plaintiff has not shown that MS Govern is an entity subject to suit."  (Order p.

16.)  As such, to the extent the FAC purports to assert claims against MS Govern, such claims should be dismissed and sanctions imposed against the Plaintiff for his willful violation of the Order.  *See Arroyo v. Cont'l Airlines, Inc.*, 173 Fed.Appx. 634, 635 (9th Cir.2006)(*citing Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir.2001)(district courts have discretion under their inherent powers to impose sanctions upon finding of bad faith, which can be defined as recklessness "combined with an additional factor such as frivolousness, harassment, or an improper purpose")); *see also In re Clawson*, 434 B.R. 556, 572-73 (N.D.Cal.Bankr. 2010)(federal courts have "inherent" authority to impose sanctions, including awarding attorneys' fees following notice and a hearing, upon specifically finding that a party acted with "willful disobedience" in regard to a court order).

### 2.   The Order Dismissed Plaintiff's Claim For Quantum Meruit Against Harris With Prejudice.

Next, Plaintiff repeats his claim for Quantum Meruit against the "Harris Defendants" in the FAC (FAC ¶¶66-70 and p. 28), in blatant violation of the Court's Order dismissing that claim ***without leave to amend***.  (Order p. 16).  In the Order, the Court expressed its view that Plaintiff's Quantum Meruit claim amounted to no more than an attempt to "hold the Harris Defendants liable for Innoprise's failure to pay," and again, it dismissed that claim against Harris "without leave to amend." (Order p. 15-16.)  As such, Plaintiff's claim for Quantum Meruit against Harris should again be dismissed and sanctions imposed against the Plaintiff for violation of the Order. *Id.*

### 3.   The Order Dismissed Plaintiff's Claims Under California's Labor Code Against Harris With Prejudice.

Finally, Plaintiff continues to seek relief against Harris through his filing of the FAC under California's Labor Code.   For example, Plaintiff's fraud claim is peppered with references to California's Labor Code, and its attendant prayer for relief seeks damages pursuant to "C. Labor C. §1194." (FAC ¶¶ 92, 98, 100, 115 and p. 29.)  However, in the Order, the Court expressly found that no employment relationship or contract existed between the Plaintiff and Harris.  (Order p. 13-14.)  Indeed, Plaintiff acknowledges in the FAC that he was terminated by Harward on April 29, 2011, the date that Harris and Innoprise executed the APA.  (FAC ¶ 36.)  Plaintiff further alleges that he was advised by

Harward to contact Harris for a position but that, after doing so, was advised that Harris was "uncertain if there was a position for Moses." *Id.*

As the Order correctly notes, the APA contained an express disclaimer stating that "Harris was not assuming any liabilities for unpaid salary" of former Innoprise employees, *ergo*, Harris did not assume any of Innoprise's alleged liability to Moses for back wages. (Order p. 14.) Accordingly, the Order clearly dismissed Plaintiff's employment-related claims for breach of contract and breach of employment contract (Counts I and II of the original Complaint) against Harris **with prejudice**, including any claims under California's Labor Code. (Order p. 14). In doing so, the Court specifically found that "there is no showing that there was a contract between Plaintiff and Harris, and none of Plaintiff's arguments or unpleaded allegations would plausibly state a claim." (*See id.*) Nevertheless, Plaintiff has persisted in re-alleging his specious California Labor Code averments in his FAC, merely rearranging them by moving his employment-related allegations from his now-dismissed breach of employment contract claim into his fraud claim. (FAC ¶¶ 92, 98, 100, 115 and p. 29.) Plaintiff's pleading "gamesmanship" is nothing more than a blatantly-improper, deliberate attempt to frustrate and circumvent the Court's clearly-expressed desire to excise this frivolous line of argument from this case, and constitutes a violation of the Order warranting dismissal with prejudice and the imposition of sanctions against Plaintiff. See *Arroyo v. Cont'l Airlines, Inc.,* 173 Fed.Appx. at 635.

### B.   Plaintiff's Fourth Cause Of Action For Fraud Does Not And Cannot Plead The Necessary Facts Required By The Order And Rule 9(b).

As set forth by the Court in its Order, "'[t]he elements of a cause of action for fraud in California are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of the falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"   (Order p. 5 )(*quoting Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1126 (9th Cir.2009)(*quoting Engalla v. Permanente Med. Group, Inc.,* 15 Cal.4th 951, 974, 64 Cal.Rptr.2d 843, 938 P.2d 903 (1997))).   The Court further notes that averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged." (Order p. 5)(*citing Vess v. Ciba-Geigy, Inc.* 317 F.3d 1090, 1106 (9th Cir.1997); Fed. R. Civ. Pro. Rule 9(b)).

1    In dismissing Plaintiff's claims of fraud and fraudulent transfer against Harwards, the Court pointed

2    out that "allegations of fraud in the fourth claim against the Harwards also fail to satisfy the Rule 9(b)

3    standard, and therefore dismisses this claim as to them as well.  (Order at 9).  The FAC merely regurgitates

4    the bogus employee claims, trying to leverage individuals to get at the deep pockets of Harris.

5    Instead, in violation of Rule 9(b), Plaintiff continues the condemnable practice of "improperly

6    lump[ing] all defendants together" when alleging the statements purported made to him in his FAC.

7    (Order p. 7).  While Plaintiff espouses a variety of creative theories about Harris' superior bargaining

8    position (allegedly used to its advantage during its negotiations with Innoprise) and promises it allegedly

9    made to Harward about royalties that he could expect to earn off of future sales of Innoprise software

10   assets, Plaintiff does not (and cannot) allege in the FAC any misrepresentations that Harwards

11   truthfully made   *to him*.  In fact, the only statement allegedly made to Plaintiff that he attributes to

12   Harris in his FAC occurred when Harris informed him on or about May 16, 2011 -- two weeks after the

13   closing of the APA and Innoprise's termination of his employment --  that it was "uncertain if there was

14   a position [at Harris] for Moses."  (FAC ¶ 39.)  Obviously, this statement alone cannot serve as the basis

15   for a fraud count.

16   The FAC tries to get around this fatal problem by alleging (again, *sans* any factual support

17   whatsoever) that Harris was somehow "aware that Harward…was representing to creditors, such as

18   Moses, that they would be paid out of the contract or royalties."  (FAC ¶¶ 45, 89.)   If the basis for this

19   allegation (Plaintiff fails to allege any) is a statement allegedly made by or attributed to Harward, it is

20   clear that Harward could only speak to this topic while acting as a representative of Innoprise, and not as

21   an individual,        because it was Innoprise that was allegedly indebted to Plaintiff and the intended

22   recipient of future royalties, not Harris.  Aside from failing to specify *if* the basis for this bald allegation

23   was a statement, Plaintiff also fails to specify *when* such a statement was made, *where* it was made, *by*

24   *whom* and *to whom* it was made, *how* it was made, and *why* it was false when it was made, all as

25   required by Rule 9(b) and *Vess*. Again, this is just repeating bogus and untrue statements.

26   Additionally, the FAC merely repeats allegations which the Order found were too vague to

27   support a claim for fraud.  For example, the FAC repeats the original complaint's allegation that

28

1   pursuant to a "scheme" between Harris, Harward and Innoprise, Moses was being asked to "make sales

2   calls which required misrepresentations and were unlawful...." (*See* FAC ¶ 77; *cf.* Compl. ¶ 64; Order

3   p. 6.)  Likewise, the FAC reasserts the allegation originally advanced in the Complaint that Moses did

4   not appear as an "employee" in the schedules of the APA because Harris and Harward wanted "to have a

5   better package to show the Harris board of directors for agreement approval."   (*See* FAC ¶¶ 83, 90; *cf.*

6   Compl. ¶ 66; Order p. 7.)  Finally, the FAC repeats the prior allegation that Harward and Harris "advised

7   Innoprise to show Plaintiff as holding a position other than that of employee to avoid the application of

8   the employment laws." (FAC ¶ 92; Compl. ¶ 68; Order p. 7.)

9          As established in the Order, these allegations failed to set forth the required "who," "what,"

10   "where," "when," and "how" of the alleged fraud when Plaintiff initially pled them in his original

11   Complaint, and he has since neglected to address or correct these deficiencies in his FAC.  (Order pp. 7-

12   8.)   Additionally, as indicated in the Order, Plaintiff fails to specify "why" the statements were

13   fraudulent or what was errant about them at the time they were made.  (Order p. 8.)  Like in the original

14   Complaint, Plaintiff alleges in the FAC that such activities were done to avoid paying him.  (Order p. 9.)

15   However, the Order found that these types of allegations were too vague to comply with Rule 9(b).

16   (Order p. 8-9.)   For example, Plaintiff again fails to explain in the FAC why Harris, who was

17   purportedly using Innoprise's desperate financial condition to obtain an unfairly low price, would have

18   an interest in falsifying Innoprise's books and records in order to present a "better package" to its Board

19   to consummate the purchase of Innoprise.  Additionally, the FAC is self-contradictory since, on the one

20   hand, it claims that Harris' motive for these alleged fraudulent acts was to avoid paying Moses, while on

21   the other hand, it alleges that, after Harris learned of Moses' claim (post-sale), Harris "instructed

22   [Harward] to pay Moses." (FAC ¶¶ 42, 89.)

23          Finally, the FAC continues to repeat theories and allegations which were specifically rejected in

24   the Order.  For example, the FAC continues to claim that in Section 1.1 of the APA, Harris specifically

25   agreed to pay Innoprise's "accured [sic] payroll."  (FAC  ¶ 87.)  However, the Court rejected this

26   contention when Plaintiff initially advanced it in his original Complaint, instead finding, after reviewing

27   Section 1.1 of the APA in its entirety (as opposed to the single sentence cited by Plaintiff and taken

28

wholly out of context), that Harris' "Assumed Liabilities" included only those Innoprise liabilities that were explicitly set forth in the APA and there was "no allegation that an alleged liability to Plaintiff was set forth in the agreement." (Order p. 14.) Additionally, the FAC reasserts the theory that a fraud was committed because the purchase proceeds were diverted to an entity other than Innoprise. (FAC ¶¶ 95-97; Compl. ¶¶ 78-80.) However, the Order makes clear that such a "conclusory allegation is not enough to support intent," adding that pursuant to the APA, Innoprise -- *not Harris* -- designated who should receive the funds. The Harwards, acting for Innoprise, paid what they could to legitimate creditors, not bogus claims.     Accordingly, Plaintiff's Fourth Cause of Action for Fraud should be dismissed with prejudice.

C.     **Plaintiff's Fifth Cause Of Action For Fraudulent Transfer Does Not And Cannot Plead The Necessary Facts Required By The Order And California Law.**

As explained by this Court in its Order:

> "A transfer of assets made by a debtor is fraudulent as to a creditor... if the debtor made the transfer (1) with an actual intent to hinder, delay, or defraud any creditor, or (2) without receiving reasonably equivalent value in return, and either (a) was engaged in or about to engage in a business or transaction for which the debtor's assets were unreasonably small, or (b) intended to, or reasonably believed, or reasonably should have believed, that he or she would incur debts beyond his or her ability to pay as they become due." *See Cortez v. Vogt,* 52 Cal.App.4th 917, 928 (1997); *see also* Cal. Civ. Code § 3439.04. There are eleven nonexclusive factors that have been regarded as circumstantial "badges of fraud" that are probative of intent. *See* Cal. Civ. Code § 3439.04(b) ("(1) Whether the transfer or obligation was to an insider. (2) Whether the debtor retained possession or control of the property transferred after the transfer. (3) Whether the transfer or obligation was disclosed or concealed. (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit. (5) Whether the transfer was of substantially all of the debtor's assets. (6) Whether the debtor absconded. (7) Whether the debtor removed or concealed assets. (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred. (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred. (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred. (11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor."

(*See* Order pp. 9-10.)

As the Legislative Committee Comments to Cal. Civ. Code § 3439.04 make clear, "[t]he presence of one or more badges of fraud does not create a presumption of fraud. Rather, it is merely evidence from which an inference of fraudulent intent may be drawn." *See* Cal. Civ. Code § 3439.04 (Leg. Comm. Comments 1986). Moreover, under California's Uniform Fraudulent Transfer Act ("UFTA"), "[t]here is no minimum number of factors [*i.e.*, "badges of fraud"] that must be present before the scales tip in favor of finding of actual intent to defraud. This list of factors is meant to provide guidance to the trial court, not compel a finding one way or the other." *See Filip v. Bucurenciu*, 129 Cal.App.4th 825, 834, 28 Cal.Rptr.3d 884, 890 (Cal.Ct.App.3d 2005)(*citing Annod Corp. v. Hamilton & Samuels*, 100 Cal.App.4th 1286, 1298-99, 123 Cal.Rptr.2d 924 (Cal.Ct.App.4th 2002)); *see also In re Beverly*, 374 B.R. 221, 236 (9th Cir.Bankr.2007 (Cal.))("The UFTA list of 'badges of fraud' provides neither a counting rule, nor a mathematical formula... specific evidence may negate an inference of fraud notwithstanding the presence of a number of 'badges of fraud'). In other words, **"[e]ven the existence of several 'badges of fraud' may be insufficient to raise a trial issue of material fact."** *See Annod*, 100 Cal.App.4th at 1299, 123 Cal.Rptr.2d at 933 (*citing Wyzard v. Goller*, 23 Cal.App.4th 1183, 1191, 28 Cal.Rptr.2d 608 (Cal.Ct.App.2d 1994)) (Emphasis added).

Plaintiff has not adequately alleged that Harwards possessed the actual intent to defraud him necessary for the UFTA count in his FAC to withstand dismissal. Plaintiff attempts to satisfy the element that Harris did not pay adequate consideration for the purchased Innoprise assets by alleging that the agreed upon (and heavily negotiated) $3.7 million dollar purchase price was inadequate because at his June 2013 deposition, "the business was valued by the owner, Dennis Harward to be $25,000,000 based on the sale and trading in like businesses[6]. Harward has stated that there was over $10,000,000 in contract sales pending at the time." (FAC ¶ 102.) However, the unsupported conjecture of the true value of the business from an individual with "seller's remorse" is clearly an insufficient and unreliable indication of "value." *See, e.g., Asnon v. Foley*, 105 Cal.App. 624, 630-31, 288 P. 792, 794-95

_____

[6]

1    (Cal.Dist.Ct.App.2d 1930)(contractor's unsupported testimony as to the "reasonable value" of materials

2    furnished and forming the basis for claimed mechanic's lien held irrelevant, as "value" was definitively

3    established by contract which referenced contractor supply source book for pricing materials).

Case No. C 12-05271 EDL
NOTICE OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMO OF POINTS AND AUTHORITIES

Next the FAC sets forth a vague, unsupported allegation that Harris was aware that Innoprise had "creditors," and that it knew specifically that Moses was one of Innoprise's creditors. (FAC ¶ 105.)  Again, this is contrary to the disclosures in the APA, and this Court previously rejected a nearly-identical contention in its Order.  (Order pp. 10-11.)  Plaintiff simply was not identified anywhere in the APA: he was not identified as an employee or contractor with an agreement in schedule E; nor was he listed as a key employee in schedule F; and he certainly was not listed as a person with pending or threatened litigation against Innoprise in schedule D or section 3.1(J)(xvi)(n).  Further, Plaintiff's alleged contract with Innoprise was not among the "Assumed Contracts" identified in schedule K of the APA.  As the Order stated, such an unsupported, conclusory allegation is insufficient and warrants dismissal.  (Order pp. 10-11.)

Plaintiff nevertheless attempts to claim that at the time of the APA, Harward was an "officer of Defendant Harris and constituted an insider."  (FAC ¶ 109.)  Again, this is directly controverted by the APA and inconsistent with other allegations appearing in the FAC.  In the APA, Dennis Harward is identified as a "key employee" of Innoprise who would come to work for Harris pursuant to an employment contract which was "effective as of the Closing Date" of the APA.[7]  (*See*

_____

[7]

NOTICE OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMO OF POINTS AND AUTHORITIES

1    APA, schedule F and Section 1.1 (definition of "Key Employee")).  Harward is also identified as a

2    "Principal" of Innoprise and signed the APA as the "Chief Executive Officer of Innoprise."  (*See* APA,

3    Section 1.1 (definition of "Principal") and signature p. 50); *Ott v. Home Sav. & Loan Ass'n*, 265 F.2d

4    643, 646 at n. 1 (9th Cir.1958)("*** where the allegations of a pleading are inconsistent with the terms

5    of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail over the

6    averments differing therefrom" (citation omitted)); *see also Kaufman and Broad-South Bay v. Unisys*

7    *Corp.*, 822 F.Supp. 1468, 1472 (N.D.Cal. 1993)("If the plaintiff fails to attach a pertinent document to

8    its complaint, the defendant may introduce the document as part of a motion attacking the complaint"),

9    *overruled on other grounds*, *KFC Western, Inc. v. Meghrig*, 49 F.3d 518, 523 (9th Cir.1995).  Plaintiff's

10   theory that Harris took advantage of Harward/Innoprise's dire financial conditions during its

11   negotiations with Innoprise also negates any contention that Harward was an "insider" during these

12   negotiations.

13          Finally, Plaintiff repeats the allegation from his original Complaint that the sales

14   proceeds were diverted to the personal benefit of Harward, Harward Investments, Connors and Crusader

15   Investments. (FAC ¶ 112, 114; Comp. ¶ 78.)  As noted above however, the Court expressly stated in its

16   Order that this averment fails to sufficiently allege the necessary specifics capable of establishing the

17   element of fraudulent intent.  (Order p. 10.)  The Order further notes that the APA states that the

18   purchase price would go to the seller [Innoprise] or its designee.  As such, it was Innoprise who directed

19   the payment of the purchase price, while Harris "did not have any discretion in where to pay the funds."

20   (Order p. 10.)  Accordingly, Plaintiff's Fifth Cause of Action against the Harwardfor fraudulent transfer

21   pursuant to UFTA, should be dismissed with prejudice.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28

IV.   **CONCLUSION**

Dennis and Ann Harward are pawns in this case, and only in the case because the Plaintiff thinks he can get better leverage against Harris, who has all the money.  Dennis and Ann Harward have no money to defend themselves and dont have the time or the expertise to even know how to respond to the constant paperwork the Plaintiff keeps filing.  Please let us out of the case, and please dismiss all the claims against us, or make the Plaitniff explain why he is attacking individuals who worked for a company and who now have no money to defend themselves.  Is that really justice?

Case No. C 12-05271 EDL
NOTICE OF MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMO OF POINTS AND AUTHORITIES

DATED:  September 11, 2013

Ann Harward
In *Pro Per*

DATED:  September 11, 2013

Dennis Harward
In *Pro Per*

<u>CERTIFICATE OF SERVICE</u>

I certify that I sent via U.S. mail, a true and correct copy of the foregoing document, **Defendant Ann and Dennis Harward's Notice of Motion to Dismiss Plaintiff's First Amended Complaint; Memorandum of Points and Authorities in Support**, addressed to:

Willis C. Silverthorne, Esq.
220 Bush Street, Suite 962
San Francisco, CA 94104

Michael Lane
c/o Greenberg Traurig, LLP
1201 K Street
Suite 1100
Sacramento, CA  95814-3938

\*/s/ Lisa A. Vos *original signature on file*
_____
Lisa A. Vos

1