United States District Court
For the Northern District of California

1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT
6          FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8    MARK MOSES,                          No. C -12-05271 EDL
9              Plaintiff,                 **ORDER GRANTING IN PART AND
                                          DENYING IN PART THE HARRIS
10       v.                               DEFENDANTS' MOTION TO DISMISS
                                          FIRST AMENDED COMPLAINT AND
11   INNOPRISE SOFTWARE, et al.,          GRANTING IN PART AND DENYING IN
                                          PART THE HARWARD DEFENDANTS'
12             Defendants.                MOTION TO DISMISS FIRST
     _____/    AMENDED COMPLAINT**
13

14       Harris Systems USA, Inc., and N. Harris Computer Corporation ("the Harris Defendants"),

15   and later Ann Harward and Dennis Harward ("the Harward Defendants"), moved to dismiss

16   Plaintiff's First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6).  (Dkt.

17   59; 63.)  For the reasons set forth below, the Court grants in part and denies in part these motions.

18   The Court dismisses any claims against Defendant MS Govern without leave to amend.  To the

19   extent that the FAC contains contract claims against the Harris Defendants, the Court dismisses

20   these claims without leave to amend.  The Court also dismisses the fraud claim against the Harris

21   Defendants without leave to amend, except as to Plaintiff's allegation that Dennis Harward, while an

22   employee of the Harris Defendants, made fraudulent misrepresentations to Plaintiff in May 2011.

23   The Court dismisses without leave to amend Plaintiff's fraudulent transfer claim against the Harris

24   Defendants and dismisses with leave to amend any California Labor Code claims against the Harris

25   Defendants.  Finally, the Court dismisses any claims against the Harris Defendants brought under a

26   successor liability theory with leave to amend.

27       As to the Harward Defendants, the Court dismisses the contract claims against them with

28   leave to amend.  The Court further dismisses the fraud claim against Ann Harward with leave to

     amend.  Additionally, the Court dismisses the fraudulent transfer claim and any claims brought

1    under the California Labor Code against the Harward Defendants with leave to amend.

2    **I.    Background**

3         A.    Procedural History

4         The gravamen of Plaintiff's case is that his former employer, Defendant Innoprise Software,

5    Inc., ("Innoprise") owes him approximately $71,500 in salary.  Plaintiff filed a complaint in state

6    court against Innoprise, Harward Investments, Inc., Dennis Harward, Ann Harward, Harris Systems

7    USA, Inc., N. Harris Computer Corporation, and MS Govern Co.  The complaint contained claims

8    for: (1) breach of employment agreement; (2) breach of contract; (3) quantum meruit; (4) fraud; and

9    (5) transfer in fraud of creditor.  Defendants removed the case to federal court on the basis of

10   diversity, and the Harris Defendants moved to dismiss the complaint.

11        On July 26, 2013, the Court granted the Harris Defendants' motion to dismiss with leave to

12   amend in part. (Dkt. 53.)  The Court dismissed Plaintiff's contract claims against the Harris

13   Defendants without leave to amend.  The Court also dismissed without leave to amend Plaintiff's

14   quantum meruit claim against the Harris Defendants.  Further, the Court dismissed Plaintiff's fraud

15   claim against the Harris Defendants and the Harward Defendants but granted Plaintiff leave to

16   amend.  In the context of the fraud claim, the Court noted that "[a]lthough the complaint cites

17   several labor laws, Plaintiff has failed to tie these alleged violations to the Harris Defendants."  (Dkt.

18   53 at 9.)  Additionally, the Court dismissed Plaintiff's fraudulent transfer claim against the Harris

19   Defendants and the Harward Defendants with leave to amend.  Finally, the Court dismissed all

20   claims against Defendant MS Govern.

21        Plaintiff filed a First Amended Complaint ("FAC") on August 9, 2013, against the Harris

22   Defendants, MS Govern, and the Harward Defendants.  The FAC contains claims for breach of

23   employment contract, breach of contract, quantum meruit, fraud, and transfer in fraud of creditor.

24   The Harris Defendants moved to dismiss the FAC on August 26, 2013.  The pro se Harward

25   Defendants filed a nearly identical motion to dismiss on September 12, 2013.  The Court held

26   hearings on the motions on October 22 and 29, 2013.

27        B.    FAC Allegations

28        According to the FAC, Plaintiff Mark Moses is a California resident and former employee of

United States District Court
For the Northern District of California

2

United States District Court
For the Northern District of California

Defendant Innoprise.  Innoprise allegedly designs, leases, and sells software systems used by governmental and quasi-governmental agencies for accounting and other management purposes. Plaintiff alleges that Defendant Dennis Harward was the founder, president, and COO and/or CEO of Innoprise and the owner of Defendant Harward Investments, Inc. and that Defendant Ann Harward was the office and accounting manager of Innoprise.[1]  Plaintiff alleges that Dennis Harward became a vice president of Defendant Harris Systems USA, Inc. on April 20, 2011. According to Plaintiff, Defendant Harris Systems USA is a Delaware corporation and wholly owned subsidiary of Defendant N. Harris Computer Corporation.  Plaintiff alleges that the Harris Defendants owned, developed, and sold software similar to that sold by Innoprise and that both the Harris Defendants and Innoprise were in the same customer market.  (Id.)  Plaintiff alleges that the Harris Defendants "have become the successors in interest to Innoprise."  (FAC ¶ 12.)

Plaintiff alleges that he began working as a consultant for Innoprise in August 2010.  In mid-to-late August 2010, Plaintiff and Innoprise, through Dennis Harward, allegedly reached an oral employment agreement under which Plaintiff would serve as a sales representative for Innoprise in California and the western United States.  Plaintiff was to be paid $125 per hour for 100 hours per month, or $12,500.00.  If Plaintiff did not reach the 100 hour per month mark, his salary would be decreased accordingly.   According to the FAC, Plaintiff became an Innoprise employee under this agreement on September 1, 2010.  Plaintiff alleges that after his employment began, his sales efforts were directed and supervised by Dennis Harward, Ann Harward, and the national director of sales.

Plaintiff alleges that in October 2010, Dennis Harward orally represented to him that Innoprise was experiencing cash flow problems and that his salary for September would be delayed. This pattern of delayed payment due to "cash flow problems" allegedly repeated from November 2010 through April 2011.  Also in October 2010, Ann Harward allegedly informed Plaintiff that he was not designated as an "employee" on Innoprise's books because doing so would cause difficulty with some of Innoprise's investors.

Other than the delays in salary payments, Plaintiff apparently worked for Innoprise without

---

[1] On July 18, 2013, the Court, pursuant to the parties' stipulation, severed Defendants Innoprise and Harward Investments and instructed the Clerk's Office to open a new case between Plaintiff and those defendants.

United States District Court
For the Northern District of California

incident from September 2010 through April 2011.  Plaintiff alleges that on April 28, 2011, however, Dennis Harward informed Plaintiff that he was discussing selling Innoprise to an unidentified party.  Plaintiff alleges that Harward told him that he did not need to worry about his salary because it would be covered in the purchase agreement or paid by royalties.  Plaintiff further alleges that on April 29, 2011, Harward informed Plaintiff that he had sold Innoprise to N. Harris Computer Corporation.  Also on April 29, 2011, Harward allegedly told Plaintiff that he was terminated from Innoprise's employ and should contact the sales manager of MS Govern, an entity affiliated with the Harris Defendants, about a possible position with the new company.

Plaintiff alleges that the Harris Defendants purchased Innoprise's assets via an Asset Purchase Agreement ("APA").  Plaintiff alleges that the asset transfer left Innoprise insolvent and devoid of any assets of any value and without sufficient assets to pay its obligations.  According to Plaintiff, the Harris Defendants paid $3.7 million for Innoprise's assets, but these assets were actually worth more than $25 million.  Plaintiff also alleges that despite representations to the contrary, the Harris Defendants did not make any efforts to sell Innoprise software after obtaining Innoprise's assets, reducing the amount of royalties owed to Innoprise and Harward under the APA.  Plaintiff alleges that "the fund for payment of creditors never existed and was not funded by royalties which were represented as a [sic] expectation by Harward."  (FAC ¶ 44.)  Plaintiff also alleges that as of April 29, 2011, the Harris Defendants were aware that "Harward, already a vice president of Harris as of April 20, was representing to creditors, such as Moses, that they would be paid out of the contract or royalties."  (FAC ¶ 45.)

Plaintiff alleges that the Harris Defendants announced on May 2, 2011, that they were happy to welcome all "employees of Innoprise to the Harris company family."  (FAC ¶ 36.)  Nevertheless, Plaintiff alleges that the sales manager of the Harris Defendants informed him on May 16, 2011 that it was uncertain whether the Harris Defendants would have a position for him.  Plaintiff does not allege that he was ever hired by the Harris Defendants.  Plaintiff alleges, however, that in May 2011, Harward, while a vice president of the Harris Defendants, directed him to continue his sales efforts with certain customers and represented that Plaintiff would be paid commissions on any contracts that resulted.  According to Plaintiff, his efforts resulted in a contract with the city of Flagstaff.

C.      Asset Purchase Agreement

As Plaintiff alleges, the Harris Defendants purchased the assets of Innoprise on April 29, 2011, pursuant to the APA, which the Court took judicial notice of without objection in its prior Order. (Dkt. 53 at 11 n.1.)  The APA is between Defendant N. Harris Computer Corporation and Defendant Harris Systems USA, Inc. as purchasers, Defendant Innoprise Software, Inc., as seller, and Dennis Harward and the Bridge Holders as warrantors. (APA, Dkt. 6-2 at 1.)  Under the APA, Innoprise sold the Harris Defendants assets in the form of, among other things, software and intellectual property rights in the software, products sold under the Innoprise name, all intellectual property owned by Innoprise, certain contracts, Innoprise's computer equipment and accessories, Innoprise's books and records and accounts, Innoprise's customer and supplier lists, and Innoprise's goodwill related to the software. (APA §§ 2.1, 2.2.)  The purchase price is redacted from the version of the APA submitted to the Court, but the parties agree that the Harris Defendants paid $3.7 million for Innoprise's assets. (FAC ¶ 39; Defs.' Reply at 11.)   The APA provided that the purchase price "will be payable by the Purchasers to the Seller (or as otherwise directed in writing by the Seller)." (APA § 2.4.)

The APA also provided that the Harris Defendants would assume only specified obligations and liabilities.  Of particular relevance here, the Harris Defendants expressly did not assume "any liability or obligation . . . with respect to employment or consulting agreements of any nature and compensation or employee benefits of any nature owed to any employees, former employees, agents or independent contractors of [Innoprise], whether or not employed by [the Harris Defendants] after the Closing Date, that (I) arises out of or relates to the employment . . . relationship between [Innoprise] and any such individuals." (APA § 2.8(g).)

The APA also provided that certain of Innoprise's employees would be hired by Defendant N. Harris Computer Corporation effective April 29, 2011.  Under APA § 3.1(ii)(ii), "the Key Employees will be transferred to the Canadian Purchaser as new employees effective as of the date hereof."  The APA defines "Key Employees" as "the 16 employees listed in Schedule F and who have entered into an Employment Agreement effective as of the Closing Date." (APA § 1.1.)  Schedule F lists Dennis Harward as one of the Key Employees but does not list Plaintiff. (APA

Schedule F.)   The APA defined the "Closing Date" as April 29, 2011.  (APA § 1.1.)

## II.      Discussion

A.      Legal Standard

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Dismissal under Rule 12(b)(6) may be based on the lack of a cognizable leal theory or on the absence of sufficient facts alleged under a cognizable theory.  Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008).  The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff."  Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions."  Iqbal, 556 U.S. at 678.  Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.  Fields v. Legacy Health Sys., 413 F.3d 943, 950 n.5 (9th Cir. 2005).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Iqbal, 556 U.S. at 679.  Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief."  Id.  Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct."  Id. at 678 (internal quotation marks omitted).  That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

On a motion to dismiss, a court's analysis is generally limited to the contents of the complaint.  Dichter-Mad Family Partners, LLP v. United States, 709 F.3d 749, 762 (9th Cir. 2013.) A court may also consider, however, exhibits that the plaintiff has attached to the complaint without converting a Rule 12 motion into one for summary judgment under Rule 56.  Id.  Federal Rule of Civil Procedure 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   is part of the pleading for all purposes."[2]

2       In addition to satisfying Rule 12(b)(6), a plaintiff's fraud allegations must satisfy Rule 9(b),

3   which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or

4   mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); Vess v. Ciba-Geigy, Inc., 317 F.3d

5   10907, 1106 (9th Cir. 1997) ("Rule 9(b) demands that, when averments of fraud are made, the

6   circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the

7   particular misconduct . . . so that they can defend against the charge and not just deny that they have

8   done anything wrong.'" Averments of fraud must be accompanied by "the who, what, when, where,

9   and how" of the misconduct charged.") (internal citations omitted).   Rule 9(b)'s heightened

10  pleading standard is not, however, "an invitation to disregard Rule 8's requirement of simplicity,

11  directness, and clarity." McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996).  "A pleading is

12  sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant

13  can prepare an adequate answer from the allegations." Neubronner v. Milken, 6 F.3d 666, 671-72

14  (9th Cir. 1993).

15      **B.   Claims Against MS Govern**

16      In its prior order, the Court dismissed Defendant MS Govern because Plaintiff failed to show

17  that it was an entity subject to suit.  (Dkt. 53 at 16.)  MS Govern still appears as a defendant,

18  however, in the caption of the FAC and is mentioned in the prayer for relief.  Plaintiff acknowledges

19  that MS Govern was dismissed and agrees to amend the FAC to remove it.  Accordingly, the Court

20  dismisses any claims against MS Govern with prejudice.

21      **C.   Contract Claims**

22          **1.   Harris Defendants**

23      In its prior order, the Court dismissed Plaintiff's contract claims against the Harris

24  _____

25      [2] Throughout his opposition brief, Plaintiff cites and quotes the deposition transcript of Dennis
Harward and requests that the Court "accept and take judicial notice" of the deposition.  Plaintiff did

26  not, however, attach the deposition transcript to the FAC or submit it as an exhibit to his motion papers.
More importantly, to allow Plaintiff to bolster his allegations with a deposition transcript in the face of

27  a motion to dismiss would violate Federal Rule of Civil Procedure 12(d), which provides that a Court
can only rely on matters outside the pleadings if it converts the motion to one for summary judgment.

28  The deposition transcript is also not judicially noticeable because it does not consist of facts that are not
subject to reasonable dispute. Fed. R. Evid. 201(b).  Additionally, Plaintiff himself acknowledges that
Harward's deposition was only "partial."  (Pl.'s Opp. at 9.)

United States District Court
For the Northern District of California

1    Defendants without leave to amend.  The first and second claims of the FAC are again for breach of

2    employment agreement and breach of contract, respectively.  (FAC ¶¶ 52-65.)  In both claims,

3    Plaintiff alleges that Innoprise agreed to pay him for his services and that Innoprise owes him salary

4    for November-December 2010 and January-April 2011.  (FAC ¶¶ 54, 63.)  The FAC's contract

5    claims continue to refer to the Harris Defendants.  (FAC ¶ 58, prayer for relief.)

6           Although Plaintiff argues that newly discovered facts justify the Court reconsidering its

7    ruling on the contract claims and quantum meruit, Plaintiff has not pled any facts to show that the

8    Harris Defendants entered into any agreement with Plaintiff.  The allegations of the first and second

9    claims of the FAC are identical to the allegations of the first and second claims of the original

10   complaint, and neither pleading alleges a contract between the Harris Defendants and Plaintiff.

11   Moreover,  as discussed below, Plaintiff has not adequately pled that the Harris Defendants are

12   indirectly liable under a successor liability theory.   Consequently, the Court dismisses the first and

13   second claims of the FAC against the Harris Defendants without leave to amend.

14                 2.     Harward Defendants

15          Although the Harward Defendants did not move to dismiss the original complaint, it now

16   appears that Plaintiff has failed to state a contract claim against them.  Regardless of whether

17   Plaintiff was an employee or an independent contractor, Plaintiff's first and second claims allege one

18   contract: an agreement between Plaintiff and Innoprise whereby Plaintiff would be paid for his

19   services.  (FAC ¶¶ 53,54, 60.)  Plaintiff does not allege that the Harward Defendants were parties to

20   this contract.  He alleges that "Harward on behalf of Innoprise orally contracted with" him and that

21   he worked for Innoprise.  (FAC ¶¶ 17-19, 60.)  Moreover, although Plaintiff alleges that Innoprise's

22   corporate status lapsed and that the Harward Defendants were the only owners of Innoprise, he has

23   not sufficiently pled that the Harward Defendants are subject to alter ego liability for claims against

24   Innoprise.  See Toho-Towa Co., Ltd. v. Morgan Creek Prods., 217 Cal. App. 4th 1096, 1106-07

25   (Cal.  Ct.  App.  2013) (describing alter ego doctrine).  The Court therefore dismisses the first and

26   second claims against the Harward Defendants with leave to amend.

27          D.     Quantum Meruit

28                 1.     Harris Defendants

8

In the prior order, the Court dismissed Plaintiff's quantum meruit claim against the Harris Defendants without leave to amend. (Dkt. 53 at 16.)   The Court reasoned that the original complaint only sought quantum meruit for the time that Plaintiff was employed by Innoprise and that "there was no allegation that Harris asked Plaintiff to do anything." (Id. at 15-16.)   Despite not being granted leave to amend, however, Plaintiff re-alleges quantum meruit against the Harris Defendants in the FAC.  The Harris Defendants argue that Plaintiff violated the Court's order, and that the quantum meruit allegations of the FAC, even if considered, do not state a claim against them.  Plaintiff counters that discovery revealed new facts that give rise to an actionable quantum meruit claim against the Harris Defendants.

Plaintiff should have moved for leave to file a motion for reconsideration upon discovering new facts regarding his quantum meruit claim.  Nevertheless, the Court's previous dismissal without leave to amend was based on the belief that Plaintiff could not allege facts supporting a quantum meruit claim against the Harris Defendants.  Plaintiff has, however, pled new facts.  Plaintiff now alleges that in May 2011, Dennis Harward asked Plaintiff to keep working despite being terminated from Innoprise.  (FAC ¶ 67.)  It is undisputed that by May 2011, Dennis Harward was an employee of N. Harris Computer Corporation.  (APA § 3.2(ii)(ii); Defs.' Reply at 2 n.2.)  Plaintiff further alleges that he performed services based on Dennis Harward's instructions, the Harris Defendants benefitted from these services, and he expected to be compensated for his services.  (FAC ¶ 67-68.)  Additionally, Plaintiff alleges that the Harris Defendants have not paid for "addition[al] commissions on the work for Flagstaff," and Plaintiff's requested damages include "commissions on the May 2011 employment according to proof."  (FAC ¶ 69, prayer at 28.)

Plaintiff's new allegations state a quantum meruit claim against the Harris Defendants.  See Miller v. Campbell, Warburton, Fitzsimmons, Smith, Mendel & Pastore, 162 Cal. App. 4th 1331, 1344 (2008) (describing elements of quantum meruit). This claim is limited, however, to the services Plaintiff allegedly provided after April 29, 2011.  Although Plaintiff alleges that Dennis Harward became a vice president of N. Harris Computer Corporation on April 20, 2011 (FAC ¶¶ 8, 45), and argues that he was wearing "two hats" when dealing with Plaintiff, the APA provided that Dennis Harward did not become an employee of the Harris Defendants until April 29, 2011.  To the extent

United States District Court
For the Northern District of California

9

that there is a conflict between Plaintiff's allegation and the APA, the APA controls.  <u>Gamble v.</u>

<u>GMAC Mortg. Corp.</u>,  Case No. 08-5532 RMW, 2009 U.S. Dist. LEXIS 12214, at *6 (N.D. Cal.

Feb. 18, 2009).

        2.      Harward Defendants

        Previously, Court noted that "Plaintiff appears to have stated a claim for quantum meruit

against the Harwards" because "Plaintiff alleges that he was employed by Innoprise, but that he

provided services at the request of the Harwards and for the benefit of the Harwards."  (Dkt. 53 at

16.)  The Harward Defendants' present motion repeats the Harris Defendants' arguments but does

not explain why the quantum meruit claim in the FAC should be dismissed with respect them.  The

FAC, like the original complaint, adequately alleges that Plaintiff performed services at the Harward

Defendants' request and that these services benefitted the Harward Defendants and were not

gratuitous.  The Court therefore denies the Harward Defendants' motion to dismiss with respect to

quantum meruit.

        D.     <u>Fraud Claim</u>

        1.      Harris Defendants

        The Court previously dismissed Plaintiff's fraud claim against the Harris Defendants with

leave to amend.  (Dkt. 53 at 6-8.)  The Court found that Plaintiff had not alleged that anyone

associated with the Harris Defendants made any misrepresentations and that Plaintiff did not

otherwise plead fraud with the particularity required by Rule 9(b).  Although Plaintiff has cured

some of these deficiencies in the FAC, he has still, with one exception, failed to allege that anyone

associated with the Harris Defendants made any misrepresentations.  One of the elements of fraud is

that a defendant made a misrepresentation in the form of a false representation, concealment, or

nondisclosure.  <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1126 (9th Cir. 2009).   The

misrepresentations alleged in the FAC were made by Harward, not the Harris Defendants.  (<u>See</u>

FAC ¶¶ 34, 35, 67, 72, 73, 89, 91.)  Plaintiff argues that the Court should impute these statements to

the Harris Defendants because Dennis Harward was allegedly working for both Innoprise and the

Harris Defendants as of April 20, 2011.  (FAC ¶¶ 8, 45; Pl.'s Opp. at 6.)  As noted above, however,

the APA provided that Dennis Harward did not become an employee of the N. Harris Computer

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    Corporation until April 29, 2011.  Consequently, none of the statements made by Dennis Harward

2    can be imputed to the Harris Defendants before that date.  Moreover, even if the Court were to

3    accept Plaintiff's April 20, 2011, employment date, many of the alleged misrepresentations occurred

4    over a year before that date as well.

5         Plaintiff's allegations of fraud based on nondisclosure or concealment also fail to state a

6    claim.  First, several of the alleged nondisclosures are alleged to have been the fault of Dennis

7    Harward, not the Harris Defendants.  (FAC ¶ 75, 77.)  Second, Plaintiff does not allege that the

8    Harris Defendants had a duty to disclose the allegedly concealed information to Plaintiff.  Fraud

9    based on concealment or nondisclosure requires that "the defendant must have been under a duty to

10   disclose the fact to the plaintiff."  Roddenberry v. Roddenberry, 44 Cal. App. 4th 634, 665-66 (Cal.

11   Ct. App. 1996).  Even where a defendant has exclusive knowledge of material facts not known to

12   the plaintiff, there must be some relationship as a result of a transaction between the parties such that

13   a duty to disclose exists.  LiMandri v. Judkins, 52 Cal. App. 4th 326, 336 (Cal. Ct. App. 1997)

14   (noting that in absence of fiduciary relationship there must be "the existence of some other

15   relationship between the Plaintiff and defendant in which a duty to disclose can arise").  Here,

16   Plaintiff does not allege that the Harris Defendants had any relationship with Plaintiff prior to

17   Plaintiff being terminated on April 29, 2011.

18        The remainder of Plaintiff's allegations do not give rise to a plausible claim for fraud.  The

19   Court previously found that Plaintiff's allegations about a scheme in which Plaintiff made sales calls

20   requiring unlawful misrepresentations were too vague to satisfy Rule 9.  (Dkt. 53 at 7.)  Similarly,

21   the Court found that Plaintiff's allegations that Defendants all advised Innoprise to falsely indicate

22   that Plaintiff was not an Innoprise employee were pled with insufficient particularity.  (Dkt. 53 at 7,

23   9.)  Plaintiff has not provided any reason to treat these allegations differently in the FAC.

24        However, Plaintiff has sufficiently alleged fraud against the Harris Defendants with respect

25   to one alleged misrepresentation.  Plaintiff alleges that in May 2011, Dennis Harward directed

26   Plaintiff to continue sales efforts with certain customers and informed Plaintiff that he would be paid

27   commissions on any contracts.  (FAC ¶ 67).  Plaintiff alleges that his efforts resulted in a contract

28   with the city of Flagstaff.  (Id.)  Plaintiff also alleges that "the misrepresentation of Harward and

**United States District Court**
For the Northern District of California

1   Innoprise and its falsity was known to them" and that the representations that he would be paid for

2   his efforts were "false and neither Harward, Innoprise or Harris intended to pay him and he has not

3   been paid." (FAC ¶¶ 89, 94.)  Moreover, he alleges that absent the alleged misrepresentations, he

4   "would not have accepted the offer of employment or accepted the request of May 2011 from

5   Harward and Harris for work after April 29, 2011." (FAC ¶ 91.)  It is questionable whether Plaintiff

6   can prove reliance, but the Court concludes that the May 2011 fraud allegations state a claim against

7   the Harris Defendants.  Consequently, the Court dismisses Plaintiff's fraud claim against the Harris

8   Defendants without leave to amend, except as to Plaintiff's fraud allegations involving Dennis

9   Harward's statements in May 2011.

10                    2.       Dennis Harward

11          The FAC states a claim for fraud against Dennis Harward.   As noted in the Court's prior

12   order, the elements of a fraud claim in California are: '(a) misrepresentation (false representation,

13   concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to

14   induce reliance; (d) justifiable reliance; and (e) resulting damage.'"  Kearns v. Ford Motor Co., 567

15   F.3d 1120, 1126 (9th Cir. 2009) (quoting Engalla v. Permanente Med. Group, Inc., 15 Cal.4th 951,

16   974, (Cal. 1997)).  Here, Plaintiff has pled some fraud claims against Dennis Harward with

17   sufficient specificity to satisfy Rule 9(b).  Plaintiff alleges that in August 2010, Harward

18   represented to him in person and over the telephone that Innoprise was a financially viable company

19   and was engaged in lawful business practices.  (FAC ¶¶  72.)  Plaintiff alleges that this

20   representation was untrue, Harward knew that it was untrue, Harward made it with intent to mislead,

21   and that Plaintiff relied on it to his detriment.  (FAC ¶¶ 74, 75, 76, 79.)  Plaintiff further alleges that

22   on April 28, 2011, Harward told Plaintiff that his salary would be covered in the sales agreement or

23   paid by royalties and that he did not need to worry.  (FAC ¶¶ 34-35.)  As described above, Plaintiff

24   also alleges that in May 2011, Harward represented that Plaintiff would be paid commissions on any

25   contracts he obtained.  (FAC ¶  67).  Plaintiff alleges that these representations were false, that

26   Harward did not intend to pay him, and that he relied on these representations to his detriment.

27   (FAC ¶¶ 89, 91, 93, 94.)  These allegations are sufficient to state a claim under Rule 12(b)(6), and

28   give Dennis Harward notice sufficient under Rule 9(b) for him to defend himself.  The Court

United States District Court
For the Northern District of California

1    therefore denies the Harward Defendants' motion to dismiss the fraud claim with respect to these

2    allegations against Dennis Harward.

3            The other fraud allegations are not pled with sufficient particularity.  Plaintiff's allegations

4    that the Harris Defendants and the Harward Defendants purposefully mis-defined Plaintiff as a non-

5    employee lack the required detail about date and place and improperly lump multiple defendants

6    together.  (FAC ¶¶  83, 90, 92.)   Moreover, Plaintiff's allegation that a provision of the APA itself is

7    fraudulent (FAC ¶ 95) lacks the specificity required by Rule 9(b).  Further, Plaintiff has not

8    explained how the "diversion of monies" from Innoprise to Harward meets the elements of fraud.

9    (FAC ¶¶  96-97.)  To the extent that Plaintiff's fraud claim is based on these allegations, the claim is

10   dismissed against Dennis Harward with leave to amend.

11                    3.      Ann Harward

12           Plaintiff fails to state a fraud claim against Ann Harward.  Plaintiff does not allege that she

13   made any fraudulent misrepresentations to Plaintiff or concealed information that she had a duty to

14   disclose to him.  Plaintiff alleges that Ann Harward told him in October 2010 that she did not

15   designate him as an employee on Innoprise's books "because this would cause some difficulty with

16   certain of the company's investors."  (FAC ¶ 32.)  Plaintiff does not allege, however, that this

17   particular statement was false, that Ann Harward knew it to be false, or that he relied on that

18   particular statement to his detriment.  Moreover, the fraud section of the FAC improperly lumps Ann

19   Harward with other defendants who allegedly had knowledge of misrepresentations made by others.

20   (FAC ¶¶ 77, 92, 94, 96.)  At the hearing, Plaintiff's counsel argued that Ann Harward was liable

21   because she was a financial officer of Innoprise and was listed as a shareholder of Defendant

22   Harward Investments and thus part of the overarching scheme against Plaintiff.  The Harward

23   Defendants disputed these allegations.  Ann Harward's status as an Innoprise officer and Harward

24   Investments shareholder, however, even if true, does not render her liable for fraud in the absence of

25   any allegations against her specifically.  The Court therefore dismisses Plaintiff's fraud claim

26   against Ann Harward without prejudice.

27

28

**United States District Court**
For the Northern District of California

D.     <u>Fraudulent Transfer Claim</u>

     1.     Harris Defendants

Plaintiff's fifth claim for transfer in fraud of creditor fails against the Harris Defendants. "A transfer of assets made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer (1) with an actual intent to hinder, delay, or defraud any creditor, or (2) without receiving reasonably equivalent value in return, and either (a) was engaged in or about to engage in a business or transaction for which the debtor's assets were unreasonably small, or (b) intended to, or reasonably believed, or reasonably should have believed, that he or she would incur debts beyond his or her ability to pay as they became due." <u>See</u> <u>Cortez v.</u> <u>Vogt</u>, 52 Cal. App. 4th 917, 928 (Cal. 1997) (internal citations omitted); <u>see also</u> Cal. Civ. Code § 3439.04. In determining whether a debtor transferred assets with fraudulent intent, a court considers

> (1) Whether the transfer or obligation was to an insider. (2) Whether the debtor retained possession or control of the property transferred after the transfer. (3) Whether the transfer or obligation was disclosed or concealed. (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit. (5) Whether the transfer was of substantially all the debtor's assets. (6) Whether the debtor absconded. (7) Whether the debtor removed or concealed assets. (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred. (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred. (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred. (11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

<u>See</u> Cal. Civ. Code § 3439.04(b).

Plaintiff argues that the FAC states a claim for fraudulent transfer because he alleges that Innoprise did not get reasonably equivalent value for its assets because the Harris Defendants paid $3.7 million for assets worth $25 million. (FAC ¶¶ 39, 102.) Plaintiff also argues that numerous "badges of fraud exist," namely, that the transaction was concealed and not disclosed to Plaintiff, that Innoprise had been sued, and that the transfer was of substantially all of Innoprise's assets. (Pl.'s Opp. at 19, 20.) Plaintiff also alleges that Harward was an insider with respect to the Harris Defendants. (FAC ¶ 109.) The Harris Defendants assert that the $25 million figure is unsupported conjecture by Dennis Harward and is an insufficient and unreliable indication of value, as it is contradicted by other allegations of the FAC and the schedules attached to the APA.

The Court need not reach the parties' arguments about the true value of Innoprise's assets, which is a factual dispute, because Plaintiff's fraudulent transfer claim fails as applied to the Harris Defendants for a more fundamental reason – the Harris Defendants were not debtors of Plaintiff when any transfer was made.  A fraudulent transfer claim relates to a transfer of assets made by a debtor and focuses on the debtor's intent.  Plaintiff acknowledges that Innoprise is the debtor in this context, not the Harris Defendants. (Pl.'s Opp. at 19-20.)  Moreover, Plaintiff's focus on the value of the Innoprise's assets, and whether this transfer left Innoprise insolvent, is not relevant because Plaintiff is not seeking to set aside the transfer between Innoprise and the Harris Defendants.  According to the FAC, the fraudulent transfer was "[t]he directing of the funds from the purchase of Innoprise's assets to the personal benefit of Harward, A.  Harward, Harward investment, Inc., John Connors, and Crusader Investments."  (FAC ¶¶ 112, 113.)  Similarly, Plaintiff requests that the Court "avoid the transfer and payment of proceeds of the purchase of Innoprise as directed to sources other than Innoprise in that said transfer left Innoprise without the assets to pay its debts and the moneys due to [Plaintiff.]."  (FAC ¶ 116.)  Consequently, the transfer at issue in Claim 5 of the FAC is the diversion of the $3.7 million purchase price from Innoprise to Harward Investments, Inc.  Plaintiff has not adequately alleged that this transfer satisfies the elements of fraudulent transfer.  Further, the Harris Defendants are not Plaintiff's debtor, and they did not divert the funds; under the APA, the Harris Defendants were required to pay the $3.7 million to Innoprise or whoever Innoprise designated should receive the funds.  (APA § 2.4.)

In sum, Plaintiff's allegations about reasonably equivalent value and badges of fraud focuses on the transfer of Innoprise's assets to the Harris Defendants, but Plaintiff seeks to set aside a different transaction, namely the diversion of the purchase price from Innoprise to the Harward Investments.  Because the Harris Defendants were not Plaintiff's debtors at the time of either transaction, and there is no allegation that the Harris Defendants were the ones who diverted the funds, Plaintiff has failed to state a claim for fraudulent transfer against them.  The Court therefore dismisses Plaintiff's fifth claim against the Harris Defendants without leave to amend.

### 2.    Harward Defendants

Plaintiff also fails to state a fraudulent transfer claim against the Harward Defendants.

15

1    Plaintiff seeks to set aside the transfer of the $3.7 million purchase price to Harward Investments.

2    The only transfers at issue – the sale of Innoprise's assets and the diversion of the purchase price –

3    were made by Innoprise, not the Harward Defendants.  The FAC does not allege that the Harward

4    Defendants were the alter egos of Innoprise.  Plaintiff also acknowledges that the "debtor" for

5    fraudulent transfer purposes was Innoprise.  Consequently, Plaintiff has not stated a fraudulent

6    transfer claim against the Harward Defendants individually, and the Court dismisses the fraudulent

7    transfer claim against the Harward Defendants with leave to amend.

8               E.    California Labor Code

9         Like the original complaint, the FAC contains several references to various provisions of the

10   California Labor Code.  Plaintiff acknowledges that these provisions do not apply directly against

11   the Harris Defendants but rather " operate against Innoprise and Harward" and implicate the Harris

12   Defendants only to the extent that they are liable for Innoprise's actions under the doctrine of

13   successor liability.  (Pl.'s Opp. at 13.)  As discussed below, the Court dismisses Plaintiff's successor

14   liability allegations with leave to amend, so the Court also dismisses any claim against the Harris

15   Defendants premised on the California Labor Code with leave to amend.

16        The Court also dismisses any California Labor Code claims Plaintiff asserts against the

17   Harward Defendants.  Plaintiff cites California Labor Code sections regarding treating employees as

18   independent contractors (§ 2753), an employer's duty to pay an employee wages upon discharge (§

19   201), penalties for willfully failing to pay under § 201 (§ 203), interest (§ 1194), attorney's fees (§

20   218.5), indemnification (§ 2802), waiver of benefits (§ 2804), and an employee's entitlement to

21   compensation after being dismissed (§ 2926).  (FAC ¶¶ 53, 92, 98, 100, 115, and prayer.)   Plaintiff

22   does not, however, bring any claims under these sections or explain how they relate to the FAC's

23   claims.  These confusing allegations fail to satisfy Rule 8(a), which requires that a complaint contain

24   "a short and plain statement of the claim."  Consequently, the Court dismisses any claims against the

25   Harward Defendants based on the California Labor Code with leave to amend.  See Cafasso v. Gen.

26   Dynamics C4 Sys., 637 F.3d 1047, 1059 (9th Cir.  2011) (citing cases where confusing and

27   conclusory pleadings were dismissed under Rule 8).

28

F.      Successor Liability as to the Harris Defendants

Plaintiff argues that the Harris Defendants are liable indirectly for quantum meruit, fraud, fraudulent transfer, and violations of the California Labor Code based on the doctrine of successor liability. Successor liability is an equitable doctrine that allows liability to flow from one corporation to another corporation. Cleveland v. Johnson, 209 Cal. App. 4th 1315, 1327, 1330 (Cal Ct. App. 2012). In California, a purchaser does not assume the seller's liabilities unless "(1) there is an express or implied agreement of assumption; (2) the transaction amounts to a consolidation or merger of the two corporations; (3) the purchasing corporation is a mere continuation of the seller; or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." Id. ¶ 1327.

Here, there the Harris Defendants are not liable as successors to Innoprise based on an assumption agreement or merger. The APA provided that the Harris Defendants only assumed certain, specified liabilities of Innoprise, not including Plaintiff's salary. Moreover, Plaintiff does not assert that the Harris Defendants merged or consolidated with Innoprise. Plaintiff also does not assert that the Harris Defendants are subject to successor liability based on fraudulent transfer. As described above, Plaintiff alleges that the Harris Defendants' payment of the $3.7 million purchase price to Harward Investments, instead of to Innoprise, was fraudulent. For the Harris Defendants to be liable as the successor of Innoprise, however, the relevant transfer would be the transfer of Innoprise's assets to the Harris Defendants. Again, Plaintiff does not allege that that transfer was fraudulent.

Under the "continuation theory" of successor liability, "corporations cannot escape liability by a mere change of name or a shift in assets when and where it is shown that the new corporation is, in reality, but a continuation of the old." Cleveland, 209 Cal. App. 4th at 1327 (quoting Blank v. Olcovich Shoe Corp., 20 Cal. App. 2d 456, 461 (Cal. Ct. App. 1937)). Successor liability based on "mere continuation" requires one or both of: "(1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; and (2) one or more persons were officers, directors, or stockholders of both corporations." Cleveland, 209 Cal. App. 4th at 1327 (quoting Ray v. Alad Corp., 19 Cal. 3d 22, 29

17

United States District Court
For the Northern District of California

1   (Cal. 1977)).

2       Plaintiff has failed to state a claim that the Harris Defendants are liable for claims against

3   Innoprise under the continuation theory of successor liability.  Plaintiff argues that he adequately

4   pled successor liability by alleging that: (1) the Harris Defendants purchased all or a substantial

5   amount of Innoprise's assets (FAC ¶ 37, 51); (2) the Harris Defendants continued the business of

6   Innoprise (FAC ¶¶ 48, 49); and (3) the "transfer" was to avoid or escape Innoprise's obligations or

7   to defraud creditors.  (Pl.'s Opp. at 4.)  Plaintiff also alleges numerous times that the Harris

8   Defendants obtained Innoprise's assets for $3.7 million when they were actually worth allegedly $25

9   million.  The Harris Defendants counter that Innoprise and the Harris Defendants did not have the

10   same officers prior to the asset purchase transaction.  They also argue that the $3.7 million purchase

11   price for Innoprise's assets constituted adequate consideration and that Plaintiff's allegation that the

12   assets were worth $25 million is the unsupported conjecture of Harward based on seller's remorse

13   and is inconsistent with the APA and supporting financial disclosures.

14       Plaintiff's theory of successor liability, as pled in the FAC, fails because at most Plaintiff

15   alleges that the Harris Defendants hired some of Innoprise's employees and that Harward became a

16   vice president for the Harris Defendants.  A single shared officer and some common employees does

17   not meet the mutuality of interest factor for continuation successor liability.  See Beatrice Co. v.

18   State Bd. of Equalization, 6 Cal. 4th 767, 778 (Cal.  1993) (noting that liability is imposed under the

19   mere continuation theory when a corporation reorganizes under a new name "but with practically the

20   same stockholders and directors").  This is not to say, as the Harris Defendants argue, that successor

21   liability requires that Innoprise and the Harris corporations shared common officers, directors, or

22   stockholders "**prior to the transaction**."  (Reply at 10  (emphasis in original).)  The case they cite

23   for that proposition does not address the issue.   Winner Chevrolet, Inc. v. Universal Underwriters

24   Ins. Co., 2008 WL 2693741 at *4 (E.D. Cal.  July 1, 2008) (rejecting successor liability theory

25   because the plaintiffs did not argue allege lack of adequate consideration or common officers).

26   Further, although Plaintiff focuses on the disparity between the $3.7 million purchase price under

27   the APA and Innoprise's alleged $25 million value, Plaintiff does not allege that the $3.7 million

28   purchase price left Innoprise unable to pay its debts.  Rather, Plaintiff alleges that the diversion of

United States District Court
For the Northern District of California

1   this amount left Innoprise unable to pay its obligations.

2        In sum, the FAC does not plead facts sufficient to state a claim of successor liability under

3   the continuation theory.  This is, however, a fact-intensive issue, and at the hearing, Plaintiff's

4   counsel indicated that there were additional, unpled facts that support successor liability.

5   Consequently, the Court dismisses any claims brought against the Harris Defendants under the

6   theory of successor liability but does so with leave to amend.

7        G.    Sanctions

8        The Harris Defendants seek sanctions because the FAC: (1) includes MS Govern in the

9   caption and prayer for relief; (2) contains a quantum meruit claim against the Harris Defendants; (3)

10  continues to refer to the Harris Defendants in the context of contract claims; and (4) purports to

11  bring California Labor Code claims against the Harris Defendants.  The Harris Defendants argue

12  that by making these allegations, Plaintiff violated the Court's prior order dismissing the original

13  complaint.

14       The Court declines to issue sanctions.  As an initial matter, the Harris Defendants did not

15  comply with Local Rule 7-8(a), which requires a party seeking sanctions to file a separate motion.

16  Moreover, although Plaintiff erred by including MS Govern in the FAC and suggesting that the

17  contract claims were brought against the Harris Defendants, there is no evidence that these mistakes

18  were made in bad faith.  Further, while Plaintiff should have sought leave to move for

19  reconsideration of the Court's prior quantum meruit ruling, he did plead new facts that sufficiently

20  stated a quantum meruit claim.  Similarly, the California Labor Code allegations are confusing but

21  are not sanctionable.

22  **III.    Conclusion**

23       For the reasons set forth above, the Court grants in part and denies in part the Harris

24  Defendants' and the Harward Defendants' motions to dismiss.

25

26

27

28

19

**IT IS SO ORDERED.**

Dated: 11/12/13

_Elizabeth D. Laporte_

ELIZABETH D. LAPORTE
United States Magistrate Judge

United States District Court
For the Northern District of California

1

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

2

3

MARK MOSES,

4
        Plaintiff,

Case Number: CV12-05271 EDL

5
  v.

**CERTIFICATE OF SERVICE**

6

INNOPRISE SOFTWARE et al,

7
        Defendant.

8
_____/

9

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District

10
Court, Northern District of California.

11
That on November 13, 2013, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said

12
envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

13

14

15
Ann M Harward
555 Eldorado Blvd

16
Suite 120
Broomfield, CO 80021

17

Dennis J Harward

18
555 Eldorado Blvd
Suite 120

19
Broomfield, CO 80021

20

21
Dated: November 13, 2013

*Lisa R. Clark*

Richard W. Wieking, Clerk

22
By: Lisa R Clark, Deputy Clerk

23

24

25

26

27

28

**United States District Court**
For the Northern District of California