IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK MOSES,<br><br>    Plaintiff,<br><br>v.<br><br>INNOPRISE SOFTWARE, et al.,<br><br>    Defendants.<br>_____ / | No. C -12-05271 EDL<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS AND DENYING MOTION FOR SANCTIONS** |

    Before the Court are Defendants Harris Systems USA, Inc., and N. Harris Computer Corporation's ("the Harris Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 81) and Motion for Sanctions (Dkt. 82). For the reasons stated at the hearing and set forth below, the Court grants in part the Harris Defendants' motion to dismiss and denies their motion for sanctions. The Court dismisses Plaintiff's claim for breach of employment agreement without leave to amend as to that claim and as to successor liability with respect to any other claim. Plaintiff only has limited claims against the Harris Defendants in this case for quantum meruit and fraud. (See Dkt. 77.) The Court will not, however, require Plaintiff to file another amended complaint at this time. The Court declines to award sanctions.

**I.    Background**

    The background for this case is set forth in the Court's prior orders dismissing Plaintiff's original and first amended complaints. (Dkt. 53, 77.) The gravamen of Plaintiff's case is that Defendants Innoprise Software, Inc., ("Innoprise") and Dennis Harward, its principal, owe Plaintiff approximately $71,500 in back pay. On July 2, 2012, Plaintiff filed a complaint in state court against Innoprise, Harward Investments, Inc., Dennis Harward, Ann Harward, the Harris Defendants, and MS Govern Co. The complaint contained claims for: (1) breach of employment agreement; (2)

breach of contract; (3) quantum meruit; (4) fraud; and (5) transfer in fraud of creditor. Plaintiff alleged generally that Defendants owe him back pay for work he performed for Innoprise prior to being terminated when the Harris Defendants purchased Innoprise's assets. Plaintiff sought $84,000 in salary and statutory damages. Defendants timely removed the case to this Court.

The Court dismissed Plaintiff's complaint with leave to amend in part on July 26, 2013. The Court dismissed Plaintiffs' breach of employment agreement, breach of contract, and quantum meruit claims against the Harris Defendants without leave to amend and dismissed Plaintiff's fraud and fraudulent transfer claims against them with leave to amend. Plaintiff filed a first amended complaint on August 9, 2013, which continued to allege breach of employment agreement, breach of contract, quantum meruit, fraud, and fraudulent transfer against the Harris Defendants. Unlike in the original complaint, Plaintiff alleged in the first amended complaint ("FAC") that the Harris Defendants were liable as successors in interest to Innoprise. (FAC ¶¶ 47-48, 54, Dkt. 54.) Plaintiff also alleged new facts regarding quantum meruit and fraud, despite the Court having dismissed the former against the Harris Defendants with prejudice. (FAC ¶ 67.)

The Court dismissed the FAC with leave to amend in part on November 13, 2013. (Dkt 77.) Among other things, the Court stated that "[t]o the extent that the FAC contains contract claims against the Harris Defendants, the Court dismisses these claims without leave to amend." (Id. at 1.) The Court also dismissed the fraudulent transfer claim against the Harris Defendants without leave to amend. The Court further dismissed "any claims against the Harris Defendants brought under a successor liability theory with leave to amend." (Id.)

On December 6, 2013, Plaintiff filed a second amended complaint ("SAC"). (Dkt. 79.) The SAC largely repeats the allegations of the FAC and contains claims for breach of employment agreement under successor liability, quantum meruit, and fraud against the Harris Defendants. It is unclear from the face of the SAC whether it alleges breach of contract and fraudulent transfer against the Harris Defendants. The SAC also contains new allegations regarding Plaintiff's alter ego theory with respect to the Harward Defendants (SAC ¶¶ 4, 9, 52 60, 102) and Defendants' alleged scheme to defraud unsecured creditors such as Plaintiff (Id. ¶¶ 59-62.)

Plaintiff also makes new allegations regarding his theory that the Harris Defendants are

2

liable as successors in interest to Innoprise. (Id. ¶¶ 48, 49, 64.) Plaintiff alleges that after the Harris Defendants purchased Innoprise's asserts, they operated as a "continuation of the business as previously operated as Innoprise" and changed only the name of the payee on contracts. (Id. ¶¶ 48, 49, 64.) According to Plaintiff, the Harris Defendants issued a press release stating that "[t]he Innoprise software assets are being purchased by Harris, & the Innoprise employees will work for a newly formed subsidiary affiliated with Harris' MS Govern local government business unit. Innoprise will continue to sell, develop, enhance, support and service the Innoprise flagship solutions." (Id. ¶ 49.) Plaintiff also alleges that the Harris Defendants advertise for employees on the Internet as "Innoprise." Further, Plaintiff alleges that Defendant Dennis Harward was an officer of the Harris Defendants as of the effective date of the asset transfer agreement between the Harris Defendants and Innoprise. (Id. ¶ 63)

The Harris Defendants moved to dismiss the breach of employment agreement, breach of contract, and fraudulent transfer claims against them in the SAC on December 23, 2014. They argued that the Court already dismissed these claims against them without leave to amend and that Plaintiff cannot plausibly plead successor liability. The Harris Defendants also moved to dismiss Plaintiff's fraud claim against them to the extent it contained allegations beyond the limited fraud claim that the Court allowed in its order on Plaintiff's FAC. The Harris Defendants further requested that the Court order Plaintiff to re-plead the remaining claims against them. The Harris Defendants also moved for sanctions against Plaintiff on the ground that he violated the Court's FAC order by realleging claims for breach of employment agreement, breach of contract, and fraudulent transfer in the SAC.

Plaintiff did not meaningfully oppose the Harris Defendants' motion to dismiss; rather he relied on his earlier opposition to the Harris Defendants' prior motion to dismiss the FAC, which is not responsive to the Harris Defendants' present arguments. Plaintiff opposed the Harris Defendants motion for sanctions. Plaintiff asserted that the SAC does not contain claims for breach of contract or fraudulent transfer and that the Court granted him leave to amend as to successor liability, which is the basis for his breach of employment agreement claim against the Harris Defendants. The Court held a hearing on the Harris Defendants' motions on February 18, 2014.

3

**II.     Discussion**

    A.     Standard of Review

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Dismissal under Rule 12(b)(6) may be based on the lack of a cognizable leal theory or on the absence of sufficient facts alleged under a cognizable theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 556 U.S. at 678. Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. Fields v. Legacy Health Sys., 413 F.3d 943, 950 n.5 (9th Cir. 2005). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct." Id. at 678 (internal quotation marks omitted). Plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

    B.     Analysis

Because Plaintiff acknowledges that the SAC does not contain claims for breach of contract or fraudulent transfer against the Harris Defendants, the Court need only address whether Plaintiff has adequately pled successor liability as to his claim for breach of employment agreement. "The general rule of successor nonliability provides that where a corporation purchases, or otherwise acquires by transfer, the assets of another corporation, the acquiring corporation does not assume the

4

selling corporation's debts and liabilities. " Fisher v. Allis-Chalmers Corp. Prod. Liab. Trust, 95 Cal. App. 4th 1182, 1188 (Cal. Ct. App. 2002.)  Successor liability is an equitable doctrine that allows liability to flow from one corporation to another corporation.  Cleveland v. Johnson, 209 Cal. App. 4th 1315, 1327, 1330 (Cal Ct. App. 2012).  In California, a purchaser does not assume the seller's liabilities unless "(1) there is an express or implied agreement of assumption; (2) the transaction amounts to a consolidation or merger of the two corporations; (3) the purchasing corporation is a mere continuation of the seller; or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." Id. ¶ 1327.  Because the doctrine shifts liability, it is "not a separate claim" but rather "requires an underlying cause of action and merely extends the liability on that cause of action to a corporation that would not otherwise be liable."  Brown Bark III, L.P. v. Haver, 219 Cal. App. 4th 809, 822-23 (Cal. Ct. App. 2013).

Plaintiff does not assert successor liability under the express or implied agreement or merger theories but instead focuses on continuation.  Under the "continuation theory" of successor liability, "corporations cannot escape liability by a mere change of name or a shift in assets when and where it is shown that the new corporation is, in reality, but a continuation of the old." Cleveland, 209 Cal. App. 4th at 1327 (quoting Blank v. Olcovich Shoe Corp., 20 Cal. App. 2d 456, 461 (Cal. Ct. App. 1937)).  Successor liability based on "mere continuation" requires one or both of: "(1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; and (2) one or more persons were officers, directors, or stockholders of both corporations."  Cleveland, 209 Cal. App. 4th at 1327 (quoting Ray v. Alad Corp., 19 Cal. 3d 22, 29 (Cal. 1977)).  "The crucial factor in determining whether a corporate acquisition constitutes either a de facto merger or a mere continuation is the same: whether adequate cash consideration was paid for the predecessor corporation's assets." Franklin v. Usx Corp., 87 Cal. App. 4th 615, 625 (Cal. Ct. App. 2001).

In dismissing Plaintiff's successor liability allegations in the FAC, the Court found insufficient Plaintiff's allegations that the Harris Defendants hired some of Innoprise's employees and that Harward became a vice president for the Harris Defendants."  (Dkt. 77 at 18.)  The Court also pointed out that Plaintiff did not allege that the $3.7 million price which the Harris Defendants

5

paid for Innoprise's assets was inadequate to satisfy Innoprise's creditors. According to the FAC, the diversion of this payment away from Innoprise caused the shortfall. The Court did not dismiss the successor liability allegations with prejudice, however, because at the hearing, Plaintiff's counsel asserted that additional, unpled facts supported successor liability.

Plaintiff's new allegations in the SAC do not sufficiently support Plaintiff's successor liability theory to avoid dismissal. Plaintiff's general allegation that the Harris Defendants operated the business of Innoprise "as a continuation of the business as previously operated as Innoprise" adds nothing substantive to his previous allegations. (SAC ¶ 48.) Although Plaintiff now alleges conclusorily that the Harris Defendants "continued the business under the same name only changing the payee on the contracts," "advertises on the internet as "Innoprise" in seeking employees then referring them to Harris," and issued a press release stating that Innoprise employees will work for a new subsidiary and "Innoprise will continue to sell, develop, enhance, support and serve the Innoprise flagship solutions," these allegations do not correspond to the elements of "continuation" successor liability. As in the SAC, Plaintiff alleges that Dennis Harward became an employee and officer of the Harris Defendants. (SAC ¶ 63.) The Court has already determined that this fact is not enough to overcome the general rule that successors are not liable. Moreover, Plaintiff has still not adequately explained how the price that the Harris Defendants paid for Innoprise's assets is inadequate consideration with respect to Innoprise's creditors. Although Plaintiff alleges that Innoprise's assets were actually worth much more, he does not allege that the payment would not cover creditors' claims. Rather, he continues to focus on the alleged diversion of this amount from Innoprise to Harward Investments. (SAC ¶ 59 ("The transfer of the purchase money in the transaction to Harward Investments . . . was fraudulent as to creditors in that it was for an amount which was insufficient to pay all unsecured creditors."); ¶ 60 (noting that Defendants made the payment of the purchase money to a third party or parties with no relationship to the creditors of Innoprise and "[t]hus, the transfer of assets to Harris was fraudulent").) The Court has already twice rejected the argument that the Harris Defendants are responsible for that diversion.

Plaintiff also fails adequately to allege successor liability on the basis of a fraudulent transfer. Plaintiff does not explain how his new allegations support successor liability under this

6

theory, and Plaintiff acknowledged in his opposition to the sanctions motion that he does not allege fraudulent transfer against the Harris Defendants in the SAC. Consequently, the Court dismisses Plaintiff's breach of employment agreement claim against the Harris Defendants, and any other claim against them based on successor liability, with prejudice. The Court will not require Plaintiff to file an new complaint at this time, but clarifies that Plaintiff's only claims against the Harris Defendants going forward are limited claims for quantum meruit and fraud, as described in the Court's prior order. (Dkt. 77.)

C. Sanctions

The Harris Defendants argue that sanctions are warranted under 28 U.S.C. § 1927 and the Court's inherent authority because Plaintiff realleged breach of employment agreement, breach of contract, and fraudulent transfer in the SAC despite the Court dismissing these claims from the FAC without leave to amend. Plaintiff counters that the SAC does not contain claims for breach of contract and breach of employment agreement against the Harris Defendants and that the Court's order permitted him leave to amend his with respect to successor liability, which is the basis for Plaintiff's breach of employment agreement claim against the Harris Defendants.

The Court denies the Harris Defendants' motion for sanctions. The Court previously "dismiss[ed] any claims brought against the Harris Defendants under the theory of successor liability but [did] so with leave to amend." (Dkt. 77 at 19.) Plaintiff therefore did not violate the Court's order by alleging in the SAC that the Harris Defendants were liable for breach of employment agreement as successors in interest to Innoprise.

**IT IS SO ORDERED.**

Dated: February 21, 2014

_Elizabeth D. Laporte_
ELIZABETH D. LAPORTE
United States Chief Magistrate Judge